Raymond F. Borgmann v. Commissioner.
Borgmann v. Commissioner
Docket No. 5515-67.
United States Tax Court
T.C. Memo 1969-129; 1969 Tax Ct. Memo LEXIS 167; 28 T.C.M. (CCH) 678; T.C.M. (RIA) 69129; June 25, 1969, Filed *167 Petitioner, who was divorced and lived alone, suffered a heart attack. Pursuant to the advice of his doctor that he obtain non-skilled live-in help, he hired one Mrs. Holtzman whose duties were twofold: (1) to seek medical assistance for petitioner in the event of a heart attack; (2) to relieve petitioner of some of the housekeeping chores. Held, the services rendered by Mrs. Holtzman do not qualify as "medical care" within the contemplation of section 213(e)(1), and consequently, the amounts paid by petitioner during 1964 for Mrs. Holtzman's salary, room and board are nondeductible personal or living expenses under section 262. George Bouchard, for the petitioner. Stephen W. Simpson, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1964 in the amount of $504.20. The sole issue for our decision is whether expenses incurred by petitioner for the 679 services of one Alice Holtzman qualify as being for the "medical care" of the petitioner within the meaning of section 213(a) of the Internal Revenue Code of 1954. [1] *168 Findings of Fact The residence of Raymond F. Borgmann (hereinafter referred to as the petitioner) at the time of filing the petition herein was Pomona, California. He filed his individual Federal income tax return for the calendar year 1964 with the district director of internal revenue at Los Angeles, California. The petitioner was divorced in 1951, and lived alone thereafter until 1955, when he hired live-in help. On January 14, 1952, he entered the employment of General Dynamics as a design engineer. In December, 1954, petitioner suffered a heart attack while in Tucson, Arizona for his mother's funeral. Petitioner's brother-in-law was chief physician and part owner of the Desert Center Clinic (hereinafter referred to as the Clinic) in Tucson. Petitioner was hospitalized for about a month at the Clinic, and after his release therefrom, spent 2 or 3 more weeks at his sister's home in Tucson. Petitioner's heart condition was diagnosed by his Tucson doctor as a myocardial infarction. Petitioner returned to his home in Pomona, California, in early February, 1955, and upon the recommendation of his Tucson doctors, he reported *169 immediately to Doctor Ellison, a specialist in internal medicine including diseases of the heart. Following a physical examination, Doctor Ellison diagnosed petitioner's illness as arteriosclerotic heart disease with coronary insufficiency and angina pectoris. Doctor Ellison prescribed nitroglycerine and other medicine for petitioner; advised him to reduce to a minimum all excitement, work pressure, and physical exertion; and recommended that he spend 2 more weeks at home before returning to work at General Dynamics. In addition, Doctor Ellison advised petitioner that he should not continue to live alone, but should obtain non-skilled, live-in help. Doctor Ellison believed that such live-in help would serve a twofold purpose: (1) seek medical attention for petitioner in the event that he should suffer another heart attack; (2) relieve petitioner of some of his household duties. Several other doctors, including two of petitioner's brothers-in-law, rendered similar advice to the effect that petitioner should have live-in help. Acting upon this advice, petitioner purchased a larger home, and hired a Mrs. Holtzman, who had previously served as a housemaid for an acquaintance of his. Mrs. *170 Holtzman studied nursing as a young girl, owns some medical books, and had previously worked for some doctors. However, she discontinued her nursing studies when she was married at age 16, and was not a registered or practical nurse. Mrs. Holtzman occupied a room with a private bath across the hall from petitioner's room. Her duties consisted chiefly of making the beds, keeping the house reasonably tidy, cooking some of the meals, and occasionally doing the laundry. On one occasion Mrs. Holtzman summoned Doctor Ellison to make an emergency house call to see the petitioner. Prior to his heart attack, petitioner's job as a design engineer for General Dynamics required him to engage in considerable travel to various naval bases. After returning to General Dynamics following his heart attack, petitioner was given sedentary work writing specifications. His medical code was changed from an unrestricted classification to C-3-10-15, which meant his activity was restricted to partial sitting, no use of company machinery or vehicles, and no climbing other than stairs. Petitioner was no longer assigned overtime work by his supervisor. Nevertheless, the petitioner was able to dress himself and *171 work a 40-hour week. He cooked some of the meals and did the laundry about half of the time. He continued to pursue his hobby as an amateur radio operator. At times petitioner took a nitroglycerine tablet to relieve chest pressure, which would dissipate soon thereafter. Petitioner did not make any visits to Doctor Ellison's office from 1959 through 1963. Doctor Ellison examined the petitioner on two occasions in 1964, and diagnosed petitioner's heart condition to be about the same as when he first examined him 10 years earlier. He recommended that petitioner continue to have non-skilled live-in help. Petitioner paid Mrs. Holtzman $1,200 in wages during 1964 and estimated that he incurred an additional amount of $1,296 for her room and board, bringing the total for live-in help during 1964 to $2,496. Pursuant to an oral compromise with an internal 680 revenue agent with respect to a tax return filed by petitioner for an earlier year, petitioner excluded 25 percent of this amount as being for personal domestic housekeeping services and deducted 75 percent or $1,872 as "nursing care" on his individual Federal income tax return for 1964. The respondent disallowed this amount in entirety *172 with the explanation that "[amounts] paid to a housekeeper for services which are not primarily for nursing care" do not constitute deductible medical expenses under section 213. Opinion Petitioner contends that the amounts incurred for Mrs. Holtzman's salary, room and board represent deductible medical expenses under section 213(a). [2] Respondent takes the position that the services rendered by Mrs. Holtzman do not qualify as "medical care" within the meaning of section 213(e)(1), [3] *173 but instead are nondeductible personal expenses under section 262. [4]
Section 213(a) allows a deduction for expenses paid by the taxpayer for the medical care of himself, his spouse, or dependents where such expenses have not been reimbursed by insurance or otherwise. The legislative history of section 23(x) of the Internal Revenue Code of 1939 (progenitor of section 213, I.R.C. 1954) manifests a Congressional intent that the deduction should be limited to expenses incurred primarily for the prevention or mitigation of a physical or mental defect or illness. S. Rept. No. 1631, 77th Cong., 2d Sess. (1942), p. 95. See also H. Grant Atkinson, Jr., 44 T.C. 39, 48 (1965). Consistent with the foregoing legislative intent, this Court has said that the term "medical care" contained in section 213(e)(1) should be narrowly construed. Carl A. Gerstacker, 49 T.C. 522, 525 (1968). See Commissioner v. Bilder, 369 U.S. 499 (1962). With these principles in mind, we agree with the respondent that Mrs. Holtzman did not perform *174 nursing or any other services that would qualify as "medical care" within the contemplation of section 213(e)(1). Petitioner stresses the fact that Doctor Ellison and several other medical doctors advised petitioner that he should not live alone, but should secure live-in help, citing Edward A. Havey, 12 T.C. 409, 412 (1949), as to the efficacy of that fact. However, not every expenditure prescribed by a physician qualifies as medical care, nor is every expense that may be incurred for the physical comfort of an individual a medical expense. John L. Seymour, 14 T.C. 1111, 1117 (1950). Indeed, Doctor Ellison's testimony before this Court showed unequivocably that he did not contemplate that the live-in help prescribed by him would render such medical services as would ordinarily be performed by a nurse. Pertinent excerpts from this testimony are set forth below: Q. * * * Exactly what do you mean by non-skilled, live-in help? I take it you did not mean a Registered Nurse? A. Positively. Q. I take it you don't mean necessarily a person conversant in what we would call a practical nurse, let's say working at the hospital as a practical nurse? A. That's right. * * * Q. In other words, it *175 is not within your contemplation that this person would be able to render oxygen care or assistance? A. No. Q. Or inject heart drugs? A. No. Q. In other words, dial the telephone or run out of the house and call for assistance? A. That's right. Furthermore, petitioner's testimony indicates that Mrs. Holtzman did not, in fact, 681 perform any nursing services. [5] He testified that her most valuable function was to be available to seek (rather than render) medical assistance in the event that he experienced another heart attack. And on at least one occasion Mrs. Holtman did telephone for Doctor Ellison to make an emergency house call to attend petitioner. This is much the same kind of invaluable aid that many of our elderly citizens require. Nevertheless, in our view, dialing the telephone or otherwise calling for emergency assistance, although an important and sometimes life-saving service, does not constitute "medical care" as that term is defined by section 213(e)(1). It would *176 be an entirely different case, for example, if Mrs. Holtzman were instructed to, and did in fact, give mouth-to-mouth resuscitation or administer a heart stimulant while an ambulance or heart specialist was on the way. But the act of seeking medical assistance would appear to be one that could be performed by anyone, and would not seem to require the specialized skills of a nurse or one trained in medicine. The fact that Mrs. Holtzman had limited training in nursing is immaterial here inasmuch as the question of whether a medical deduction is allowable turns on the nature of the services rendered rather than the experience or qualifications of the person employed. George B. Wendell, 12 T.C. 161, 163 (1949). Petitioner further testified that Mrs. Holtzman also performed such household duties as making the bed, cleaning the house, cooking some of the meals, and occasionally doing the laundry. These services are obviously not those ordinarily performed by nurses, but instead smack heavily of characteristics normally associated with personal or living expenses. Cf. McVicker v. United States, 194 F. Supp. 607 (S.D. Cal. 1961). Admittedly, Mrs. Holtzman's performance of some of the household *177 duties may have prevented petitioner from overexerting himself, thereby mitigating or alleviating his heart condition. However, to be deductible as a medical expense, the expense must bear a direct and proximate therapeutic relation to some physical or mental function or structure of the body. Carl A. Gerstacker, supra at pages 525 through 527; David K. Carlisle, 37 T.C. 424, 428 (1961); and Edward A. Havey, supra at page 412. The requisite nexus is simply not present under these facts. Moreover, it is wellsettled that expenses, which are merely beneficial to a person's general health, do not constitute "medical care" under section 213(e)(1). Arnold P. Grunwald, 51 T.C. 108, 115 (1968); and Carl A. Gerstacker, supra at page 526. The foregoing discussion, of course, provides a sufficient basis upon which to disallow petitioner's deduction not only for Mrs. Holtzman's salary, but also for amounts claimed for her room and board. Therefore, there is no need to discuss the further point raised by the respondent that the petitioner is entitled, under any circumstances, to deduct under section 213(e)(1) only those amounts paid for medical care as distinguished from deducting any amount *178 based upon the fair rental value of room and board. [6]
We therefore conclude that the entire amount claimed by petitioner for Mrs. Holtzman's salary, room and board is not deductible as a medical expense under section 213, but instead, represents a nondeductible personal or living expense pursuant to the provisions of section 262. Decision will be entered for the respondent. Footnotes
1. All future statutory references are to the Internal Revenue Code of 1954, unless otherwise designated.
2. MEDICAL, DENTAL, ETC., EXPENSES Sec. 213↩. (a) ALLOWANCE OF DEDUCTION. - There shall be allowed as a deduction the following amounts of the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent * * *. 3. Sec. 213. (e) DEFINITIONS. - For purposes of this section - (1) The term "medical care" means amounts paid - (A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or (B) for transportation primarily for and essential to medical care referred to in subparagraph (A). 4. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
5. A fact which serves to distinguish the instant case from our decision in Estate of Jacob Hentz, Jr., a Memorandum Opinion of this Court dated April 6, 1953, which was cited by petitioner in support of his case.↩
6. However, in this connection see Mark R. Harding, 46 T.C. 502↩ (1966).