CARSTON SIMON McKAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKay v. Commissioner
Docket No. 17919-80.
United States Tax Court
T.C. Memo 1986-514; 1986 Tax Ct. Memo LEXIS 89; 52 T.C.M. (CCH) 820; T.C.M. (RIA) 86514; October 20, 1986. *89 Petitioner began legal separation proceedings against her former husband in 1966 and was awarded "temporary alimony and support". Petitioner was legally separated from her former husband on May 16, 1968; she was awarded (a) almost all of the marital property, (b) $250 per month for a period of 121 months, the first payment commencing on August 1, 1968, and (c) $130 per month for the support of each of petitioner's children over whom she had custody. Petitioner and her former husband were finally divorced on April 30, 1970. The divorce decree reaffirmed the legal separation judgment, but awarded petitioner an additional $15 per month for 100 months as arrearages of amounts accrued under previous orders. Held: (1) The $250-per-month payments constitute support rather than a property settlement. Also, they are periodic payments under sec. 71(c)(2), I.R.C. 1954. Accordingly, they are includible in petitioner's gross income under sec. 71(a)(1), I.R.C. 1954. (2) The $15-per-month payments are either arrearages of (a) the $250-per-month award and so includible under sec. 71(a)(1), I.R.C. 1954, or (b) the 1966 temporary alimony and support award and so includible under sec. 71(a)(3), I.R.C. 1954. *90 During 1974, petitioner taught at the Madison Area Technical College. The College provided her with an on-campus office, to which she had access, albeit somewhat restricted. Petitioner preferred to work in her home during the evening in a room used exclusively for that purpose because (1) of the condition of her on-campus office, (2) she felt unsafe on campus after hours, and (3) her on-campus office was not available to her at some times of the day. Held: (3) Petitioner may not deduct expenses incurred for maintaining an office in her home under sec. 162(a), I.R.C. 1954, because the office was maintained for her personal convenience rather than because of the exigencies of her employment. Sec. 262, I.R.C. 1954. Carston Simon McKay, pro se. W. John Howard, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioner for 1974 in the amount of $1,240.61, and an addition to tax under section 6653(a) [1] (negligence, etc.) in the amount of $62.03. After concessions by the parties, [2] the issues for decision are as follows: (1) Whether $3,180 received by petitioner from her former *91 husband constitutes taxable alimony income, and (2) Whether petitioner is entitled to a deduction for office-in-the-home expenses. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner's legal residence was in Madison, Wisconsin. At the time petitioner filed her 1974 Federal income tax return, her name was Alice S. Haubrich [3] *92 ; she legally changed her name to Carston Simon McKay on May 27, 1975. Alimony Payments
On June 17, 1949, petitioner married Vernon F. Haubrich (hereinafter sometimes referred to as "Haubrich"), a professor at the University of Wisconsin. Three children were born of this marriage, namely Mark (born November 30, 1951), Robin (born May 19, 1953), and Kurt (born June 16, 1954). On November 17, 1966, petitioner began legal separation proceedings against Haubrich in the Family Branch of the County Court, Dane County, Wisconsin (hereinafter sometimes referred to as "the State Court"). By a temporary order dated December 9, 1966, the State Court awarded temporary "care, custody and control" of two of the children to petitioner and of the third child to Haubrich. [4] The order then states as follows: IT IS FURTHER ORDERED: That the Defendant [Haubrich] shall pay to the Plaintiff [petitioner] through the office of Clerk of Circuit Court for Dane County, Wisconsin [hereinafter sometimes referred to as "the Clerk's Office"], the sum of $625.00 per month as temporary alimony and support commencing December 1, 1966 and on the first day of each month thereafter until further *93 order of the Court. Hearings in the legal separation case were held on May 3, and May 16, 1968. Findings of Fact and Conclusions of Law directing a judgment of legal separation were issued as of May 16, 1968. (This ruling is hereinafter sometimes referred to as "the May 16, 1968, opinion".) The May 16, 1968, opinion states, in relevant part, as follows: 2. That the judgment shall provide for the division of property, custody of the minor children of the parties, and for contribution of attorneys' fees as follows: a. That the defendant is to have the legal and physical custody of the minor child, Mark. The plaintiff is to have the legal and physical custody of the minor child, Robin. The legal custody of the minor child, Kurt, is awarded to the Dane County Department of Social Services with the physical custody of Kurt being awarded to the defendant, under the supervision of the Family Counselling Division of Dane County, until further order of the Court. * * * b. That the defendant will *94 pay the sum of $130.00 per month as support for the minor child, Robin, payable on the first of each month, commencing August 1, 1968, all payments to be made through [the Clerk's Office]. * * * c. As and for a division of the property and estate of the parties hereto, and in lieu of all alimony: 1. The plaintiff is awarded the homestead, said plaintiff to assume the mortgage and 1968 property taxes and hold the defendant harmless thereon. All household goods and furnishings presently in the possession of the plaintiff are awarded to the plaintiff. All household goods and furnishings presently in the possession of the defendant are awarded to the defendant. 2. In addition, the plaintiff is to be awarded the sum of $250.00 per month for a period of 121 months, the first payment to commence on August 1, 1968. 3. The 1964 Rambler station wagon is awarded to the plaintiff together with any indebtedness thereon. The 1960 Rambler sedan is awarded to the defendant, together with any indebtedness thereon. 4. Each party is awarded their own wearing apparel and personal possessions presently in his or her possession. 5. The plaintiff is awarded the sum of $1,000.00 cash as her share *95 of any bank accounts or monies of the parties in existence at the time of the commencement of this action, said sum to be paid within 90 days of the time the Court signs the judgment. d. That the defendant shall be responsible for, as between the parties, the payment of all financial obligations of the parties incurred on or before November 17, 1966, or incurred as a result of the Temporary Order or any amendments thereto, and shall hold the plaintiff harmless thereon, except for a claim of the Faculty Credit Union, which is open to litigation. * * * f. All arrearages incurred by the defendant under the Temporary Order are to be carried forward, except if defendant made any payments directly to the plaintiff, or in some other manner termed as support, defendant shall receive credit thereon at any future Order to Show Cause or other proceeding to enforce payment of arrearages. * * * Although Haubrich made the first three required $625 payments under the temporary order, he soon fell in arrears. By the time of the May 16, 1968, opinion, Haubrich was $3,316.94 in arrears under the temporary order. The May 16, 1968, opinion required Haubrich to pay to petitioner $380 per month ($250 *96 for petitioner and $130 for Robin). By an amendment of December 11, 1968, custody of Kurt was assigned to petitioner and Haubrich was required to pay to petitioner $510 per month ($250 for petitioner and $130 each for Robin and Kurt). After corrections, the arrearage as of the end of 1968 was $2,666.94. The judgment in the legal separation case, dated February 3, 1969, decrees the same payment obligations as the May 16, 1968, opinion. For much of 1969, Haubrich paid the required $510 per month, but then he reduced his payments. After a correction relating to June and July 1968, Haubrich's arrearage amounted to $4,930.94 by mid-April 1970. On April 27, 1970, Haubrich sued petitioner for divorce. By a decree dated April 30, 1970, the State Court granted a judgment of absolute divorce to petitioner. Incorporating an oral stipulation between petitioner and Haubrich, the divorce decree reaffirms the legal separation judgment and the "property rights of" petitioner and Haubrich set forth in that judgment, and makes the following modifications to the foregoing provisions: 1. That the plaintiff [Haubrich] is in arrears for $2362 for past alimony and support and adjustment of bills and *97 claims, said sum being due to the defendant [petitioner] and to be paid in the following manner, to wit: $1500 to be paid at the rate of $15 per month commencing May 8, 1970 and the 8th of each month thereafter through [the Clerk's Office], and is in addition to the previous property division * * *, and the balance of $862 is due from plaintiff to [various other creditors] and the plaintiff is to hold the defendant harmless from said claims and to indemnify her from same. 2. [The Clerk's Office] is also directed as of April 8, 1970 to mark the plaintiff's support arrearages record as up to date and to continue as of May 8, 1970 with the previous properly division payment of $250 plus the aforesaid $15 monthly payment thereof and support money as set forth in paragraph 4. * * * 4. That the plaintiff shall pay to the defendant the sum of $130 per month commencing May 8, 1970 and the 8th of each month thereafter to [the Clerk's Office] as support for the minor child, Kurt * * *. [5] *98 Besides the above-described payments that petitioner was to receive from Haubrich, the property that petitioner and Haubrich had accumulated during the marriage was divided in the following manner; petitioner was given the family home that had a fair market value of about $36,500 and assumed the mortgage thereon of about $20,000; petitioner received the majority of the household goods and furnishings worth about $2,000, an art collection worth about $1,000 to $1,500, and her personal possessions and clothing. Haubrich received one painting from the art collection worth about $250 to $300.Haubrich also received his personal possessions such as clothing, a camera, and any household goods and furnishings in his possession as part of the property division. Petitioner received a 1964 Rambler station wagon worth about $1,500 that the parties owned free and clear of any debt. During the separation, Haubrich's father gave him a 1960 Rambler sedan.In the property division, Haubrich received this automobile then worth about $250 *99 to $300. Although there were no joint bank accounts to be divided between the parties, petitioner received a lump-sum payment of $1,000 from Haubrich. Petitioner did not receive any part of Haubrich's salary. Haubrich's obligation to make 121 $250-per-month payments was imposed by the May 16, 1968, opinion. Haubrich agreed to this arrangement of 121 periodic payments because his attorney advised him [6] that the payments would be made over a finite period and also would be tax deductible. Haubrich preferred this arrangement rather than traditional payments that are payable until the spouse's remarriage or death, even though the latter would have resulted in lower monthly payments, because he believed that petitioner would not remarry and he wanted to ensure that the payments would terminate at some point. Haubrich never discussed with his lawyer the possibility of making a lumpsum payment in 1968 rather than periodic payments. In 1979, petitioner brought an action to reopen the divorce judgment on grounds that Haubrich had fraudulently concealed assets during the *100 divorce action. The divorce court affirmed the property division in the divorce action and stated as follows: After reviewing the entire file and proceedings in this matter, it is clear that the Defendant [petitioner] has not presented evidence which would justify a modification to the property division made in 1970.While the Plaintiff [Haubrich] may have concealed some property, there is no way the Court can make a finding to the value of said property, if any. There is minimal evidence, at best, as to the assets and debts of the parties at the time of the divorce. In fact, the record reflects that the Defendant received the vast majority of the property in addition to a substantial monthly payment from the Plaintiff after the divorce for a period ending in August of 1978. If anything, the proof in this case would justify an award of money from the Defendant to the Plaintiff. However, after 10 years of divorced status and 14 years of separation, it would not be equitable to make any adjustment. It is time to bring this matter to a close. Pursuant to the divorce decree, Haubrich, in 1974, made twelve payments in the amount of $265 each (a total of $3,180) to the Clerk's Office *101 for the benefit of petitioner. Petitioner received the $3,180 from the Clerk's Office in 1974; she did not report any amount in her 1974 tax return on account of these payments from Haubrich. [7] * * * The $3,180 payments petitioner received in 1974 from Haubrich constitute periodic payments in discharge of a legal obligation which, because of the marital or family relationship, was imposed on Haubrich under the May 16, 1968, opinion, the legal separation judgment, and the divorce decree (or, in the case of the $15-per-month addition, possibly the temporary order). Office-in-the-Home Expenses
During 1974, petitioner taught at the Madison Area Technical College (hereinafter sometimes referred *102 to as the "College") in Madison, Wisconsin. [8] *103 That year the College provided to petitioner an office that she shared with three other people. The office was located in leased premises on the sixth floor of the El Esplanade Building, which was about one block from Capitol Square, the downtown area of Madison, Wisconsin. The building lease that applied to 1974 provides that instructors have access to the building only from 7:00 a.m. to 10:30 p.m., Monday through Friday, and from 7:30 a.m. to 12:00 noon, Saturday. The building was locked at all other times; petitioner was given a key to her individual office only and not to the main entrance of the building. Moreover, there was no guard present who could unlock the building for petitioner after hours.Part of the building was leased to businesses. The College's instructors did not have access to their offices in the building on any Saturday unless one or more of these businesses was operating in the building on that Saturday. Despite the foregoing restrictions on access to the building, the College did not require petitioner to maintain an office in her home. Because of the downtown location of the College and the fact that the College was significantly less populated during the afternoon and evening hours, petitioner believed it to be unsafe to remain at the College during the evening and weekend hours that her office was available to her. In addition, petitioner was told of at least two incidents in which persons who were not students had entered the building during such hours and had committed acts that required the attention of the police. Thus, petitioner believed that it would be dangerous to remain on campus after hours. As a result, petitioner usually took a bus from school to her home, a distance of about 3 miles, at any time from 3:00 p.m. to 5:00 p.m., napped for a couple of hours until about 7:00 p.m., and then prepared her supper. On those evenings that she worked at home, petitioner worked from about 8:30 p.m. until 11:00 p.m. Petitioner's office at the College was about 10 feet by 12 to 14 feet in size; it contained four desks, bookcases, and file cabinets. Because of the size of her office, petitioner kept many books in her home for which there was no room in her office. Moreover, *104 petitioner kept the books in her home because, in the past, petitioner's books had been stolen from her office. Thus, petitioner did a significant amount of her reading at home. In addition, petitioner typed much of her work at home because she did not always have access to a "workable" typewriter at the College, although there was a manual typewriter in her on-campus office. On her Federal income tax return for 1974, petitioner claimed a deduction of 559.84 for office-in-the-home expenses. Petitioner used one room of her seven-room home as an office for reading, writing articles, preparing lesson plans, maintaining a library of professional books and materials, and other related functions. [9]
* * * Petitioner maintained an office in her home primarily for her personal convenience. OPINION I. Alimony Payments
Under section 71(a)(1), [10] *106 in general, a taxpayer's gross income includes *105 periodic payments received from the taxpayer's former spouse in discharge of a legal obligation which the legal separation decree or divorce decree imposes on the former spouse because of the marital of family relationship.Section 71(c)(1) provides that payments generally will not be treated as periodic if they are made to discharge a part of an obligation the principal sum of which is specified in the legal separation decree or the divorce decree. Section 71(c)(2) provides, however, that if, by the terms of the decree, the principal sum is or may be paid over a period ending more than 10 years from the date of the decree, then the installment payments shall generally be treated as periodic payments. [11] *107 Petitioner contends that she need not include in income for 1974 the $3,180 in monthly payments she received from Haubrich in 1974 because these payments do not constitute alimony, but rather are installment payments as part of a division of property. Further, the contends that these amounts are installment payments of a principal sum which, under section 71(c)(1), are not taxable as periodic payments; also, these installment payments were to be made over a period of less than 10 years, and so section 71(c)(2) does not require them to be treated as periodic payments. Respondent disagrees, arguing that because the legal separation judgment, as reaffirmed by the divorce decree, awarded petitioner most of the property accumulated during the marriage, Haubrich's monthly payments do not represent an additional division of marital property; rather, the payments are support to petitioner, includible in her income. Respondent counters petitioner's section 71(c)(1) argument by contending that *108 the legal separation judgment, as reaffirmed by the divorce decree, requires that the payments be made over a 121-month period and, under section 71(c)(2), this causes the payments to be treated as periodic payments. We agree with respondent. Section 71(a)(1) provides that a taxpayer is to include payments in gross income if each of a series of requirements has been satisfied. One of these requirements is that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship." The quoted phrase has been interpreted to require that the payments be in the nature of support rather than a property settlement. Wright v. Commissioner,543 F.2d 593, 597 (CA7 1976), affg. 62 T.C. 377, 388-389 (1974); Beard v. Commissioner,77 T.C. 1275, 1283 (1981); Warnack v. Commissioner,71 T.C. 541 (1979); Bishop v. Commissioner,55 T.C. 720 (1971). In resolving the character of an award in a divorce or separation decree, great weight is given to the language and structure of the decree. Griffith v. Commissioner,749 F.2d 11, 13 (CA6 1984), affg. a Memorandum Opinion of this Court. [12] The determination of whether payments are in the nature of support or part *109 of a property settlement, however, is not controlled by the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement. Jacklin v. Commissioner,79 T.C. 340, 351-352 (1982); Beard v. Commissioner,77 T.C. at 1283-1284; Warnack v. Commissioner,71 T.C. at 551. Rather, the issue is a factual one of intent. Crouser v. Commissioner,668 F.2d 239, 242 (CA6 1981), affg. 73 T.C. 1113 (1980).In the case of an ambiguous decree, resolution of the issue requires an examination of all the surrounding facts and circumstances. Jacklin v. Commissioner,supra;Beard v. Commissioner,77 T.C. at 1284. This Court has identified the following factors, the presence of which indicate that the payments are in the nature of a property settlement, and the absence of one or more of which indicate that a support allowance was intended ( Beard v. Commissioner,77 T.C. at 1284-1285): (1) That the parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets, Porter v. Commissioner,388 F.2d 670, 671 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; Wright v. Commissioner,supra; (2) that the *110 recipient surrendered valuable property rights in exchange for the payments, Mann v. Commissioner,74 T.C. 1249, 1259-1262 (1980); Gammill v. Commissioner,73 T.C. 921, 928-929 (1980), [affd. 710 F.2d 607 (CA10 1982)]; Warnack v. Commissioner,supra at 550-551; (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient, Widmer v. Commissioner,75 T.C. 405, 409 (1980) * * *; McCombs v. Commissioner,397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; Land v. Commissioner,61 T.C. 675, 683 (1974); (4) that the payments are secured, Widmer v. Commissioner,supra;Gammill v. Commissioner,supra at 929; (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage, Lambros v. Commissioner,459 F.2d 69, 71-72 (6th Cir. 1972), affg. a Memorandum Opinion of this Court; Schottenstein v. Commissioner,75 T.C. 451, 464 (1980); (6) that the need of the recipient was not taken into consideration in determining the amount of the payments, McCombs v. Commissioner,supra; and (7) that a separate provision *111 for support was provided elsewhere in the decree or agreement. Schottenstein v. Commissioner,supra at 457. * * * In examining the May 16, 1968, opinion, the legal separation judgment, and the divorce decree, we conclude that the language used therein is unclear as to whether petitioner and Haubrich intended that the payments Haubrich was to make to petitioner were to represent support or a division of property. On the one hand, the State Court rulings are consistent in referring to the $250-per-month payments as being part of a division of property. On the other hand, we doubt that petitioner and Haubrich (or, rather, their attorneys in the legal separation proceeding) would have chosen a 121-month period for these payments unless there was an intent to make the payments includible in petitioner's income under section 71 and deductible by Haubrich under section 215. Haubrich testified that his attorney had advised him that the 121-month period would result in the payments being deductible. Apparently, petitioner's and Haubrich's attorneys were sufficiently tax-conscious to tailor their agreement to meet the requirements of section 71(c)(2) in order to achieve *112 includibility by petitioner and deductibility by Haubrich. However, if they were so tax-conscious, then they should have realized that the State Court's use of "property division" language in the various rulings would produce the opposite result (i.e., no inclusion and no deduction). Thus, whether the State Court rulings are viewed as a reflection of the intent of the State Court or of the intent of the litigants (i.e., petitioner and Haubrich), the language of these rulings gives support to conflicting conclusions as to intent. In examining the other Beard factors, we conclude that the most significant consideration for the instant case is embodied in the fifth factor.Apart from the payments here in dispute, petitioner was awarded substantially the entire marital estate. Haubrich kept an 8-year-old sedan, one painting, and the personal property of which he had possession. Petitioner kept the homestead, a 4-year-old station wagon, most of the couple's paintings, and the personal property of which she had possession. Also, Haubrich had to pay petitioner $1,000. The State Court's 1979 ruling states that "There is minimal evidence, at best, as to the assets and debts of the parties *113 at the time of the divorce." However, the 1979 ruling goes on to say that "In fact, the record reflects that the Defendant [petitioner] received the vest majority of the property in addition to a substantial monthly payment from the Plaintiff [Haubrich] after the divorce for a period ending in August of 1978." The record in the instant case leads us to the same conclusion as to the state of affairs at the time of the May 16, 1968, opinion. We note that the $250 per month would amount to $30,250 over the period of 121 months. Of course, the discounted value of these payments as of May 16, 1968, would have been less than $30,250, but we believe that, for any assumed earnings rate that would have been reasonable in 1968, the discounted value would have exceeded $20,000. The record in the instant case suggests that there was not enough remaining marital property held by Haubrich to cover that amount as part of a division of property. Our application of the fifth Beard factor, then, strongly suggests that the $250-per-month payments were not part of a division of property. As to the remaining Beard factors, one points toward property division (factor (3)) while several point away from *114 property division and toward support allowance (factors (2), (4), and (7)). We have no evidence as to factor (6). On the basis of the record as a whole, we conclude that Haubrich's payments of $250 per month to petitioner are in the nature of support and are not installments of a property settlement. Thus, we conclude that these payments were made in the discharge of a legal obligation imposed because of the marital or family relationship. As we have stated, supra, in order for an amount to be includible in income under section 71(a)(1), each of a series of requirements must be satisfied. Petitioner makes an alternative argument that the monthly payments are not includible in her gross income under section 71(a)(1) because these payments do not constitute "periodic payments". That is, petitioner contends that the monthly payments are installment payments of a principal sum, within the meaning of section 71(c)(1), and argues that section 71(c)(2) does not apply because the principal sum would not be paid over a period ending more than 10 years from the date of the decree. Her position is that the 121 monthly payments resulted from two separate legal actions (the legal separation *115 judgment and the divorce decree), "the two decisions as to property payments are not continuous, each decision prevails for less than 10 years, and, therefore, petitioner's property payments cannot be construed to constitute periodic payments under the 'more than 10 years rule.'" Respondent maintains that section 71(c)(1) does not apply because "The monthly payments were not installments of a lump sum obligation [i.e., obligation the principal sum of which is] specified in a decree or written instrument." Nevertheless, "It is respondent's position that the $3,180 is includible in petitioner's gross income as periodic alimony under I.R.C. § 71(c)(2)." [13]
We agree with petitioner that the monthly payments are installment payments *116 of a principal sum. We agree with respondent that the principal sum is to be paid over a period ending more than 10 years from the date of the May 16, 1968, opinion. We agree with respondent that, as a result, the monthly payments constitute periodic payments. The May 16, 1968, opinion provides that "the plaintiff is to be awarded the sum of $250.00 per month for a period of 121 months, the first payment to commence on August 1, 1968." As we stated in Warnack v. Commissioner,71 T.C. at 555: Present law does not require an express statement of the total amount due before that amount can constitute a "principal sum." Thus, it is clear that we have, in the facts before us, a principal sum stated in the agreement. We can, through the use of "mere mathematics," determine that $2,125 X 121 = $257,125. See also Crouser v. Commissioner, 73 T.C. at 1117. Applying the Warnack approach, we see that $250 X 121 = $30,250 and we conclude that $30,250 is the principal sum specified in the May 16, 1968, opinion. Under section 71(c)(1), Haubrich's installment payments of this principal sum "shall not be treated as periodic payments" -- were it not for section 71(c)(2). The May 16, 1968, opinion *117 provides that the principal sum is to be paid "for a period of 121 months, the first payment commence on August 1, 1968." The 121st payment, then, was, by the terms of the May 16, 1968, opinion, to be made on August 1, 1978, more than 10 years after the May 16, 1968, opinion. Section 71(c)(2) provides that, in such an event "then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a)". The foregoing analysis leads us to the conclusion that the $250-per-month payments in 1974 (1) were made to petitioner in discharge of a legal obligation imposed on Haubrich because of the marital or family relationship and (2) constitute periodic payments. Accordingly, these payments are includible in petitioner's gross income. The remaining $15-per-month payments in 1974 were made pursuant to the divorce decree, dated April 30, 1970. In the divorce decree, the State Court ruled that (1) Haubrich was then "in arrears for $2362 for past alimony and support and adjustment of bills and claims," (2) $862 of this amount was due from Haubrich to various creditors, and (3) the remaining $1500 [is] to be paid at the rate of $15 per month *118 commencing May 8, 1970 and the 8th of each month thereafter through [the Clerk's Office], and is in addition to the previous property division". For purposes of section 71, these $15-per-month payments of arrearages take on the same character as the original obligations that were in arrears. Olster v. Commissioner,79 T.C. 456, 462 (1982), affd. 751 F.2d 1168, 1171-1172 (CA11 1985). It is not entirely clear what payments were included in the $1,500 arrearage established in the divorce decree. The 1966 temporary order required Haubrich to pay $625 per month to petitioner "as temporary alimony and support". As we have found, by the time of the May 16, 1968, opinion, Haubrich was $3,316.94 in arrears and by the time of the divorce decree, Haubrich was $4,930.94 in arrears. If the 1974 $15-per-month payments are payments of arrearages of Haubrich's obligations to pay $250 per month to petitioner under the May 16, 1968, opinion, then they are includible in petitioner's gross income for the same reasons that the $250-per-month payments are so includible. If the 1974 $15-per-month payments are payments of arrearages of Haubrich's obligations to pay $625 per month to petitioner under *119 the 1966 temporary order, then they are also includible in petitioner's gross income, both for the reasons applicable to the $250-per-month payments and because alimony pendente lite is subject to the same rules as so-called permanent alimony. Section 71(a)(3); Korman v. Commissioner,36 T.C. 654, 656-657 (1961), affd. 298 F.2d 444 (CA2 1962). Accordingly, we conclude that petitioner must include in her 1974 gross income all of the $3,180 in monthly payments that she received from Haubrich in 1974. Petitioner's contention that the divorce decree in 1970 set off a new 10-year period for purposes of section 71(c)(2) is essentially similar to the argument of the taxpayer in Wright v. Commissioner,supra.In Wright, we held that the obligation to make support payments to the wife in a divorce action arose when the divorce court orally pronounced its judgment on October 4, 1967, which judgment was subsequently formally entered as a written judgment on February 2, 1968. In that case, the wife had argued that the payments were not periodic payments, even though the divorce court had ordered that the payments be made over 10-1/2 years, because she claimed that the obligation to pay did not *120 commence until October 4, 1968, the date when the divorce decree became final; thus, in her view, since the last payment was due on April 4, 1978, the payments did not satisfy the 10-year periodic payment requirement. We held that the obligation to pay arose from the oral judgment rendered by the court on October 4, 1967, that was subsequently reconfirmed in the written judgment entered on February 2, 1968; thus, we concluded as follows (62 T.C. at 395): This obligation to make the installment payments extended over a period of over 10 years. The obligation was first to a wife separated from her husband by the entry of the divorce judgment on October 4, 1967, and to a divorced wife from 1 year thereafter. Under the law as it now stands, whether there is a status of separation or of divorce is immaterial since the statute covers payments in either category. As in Wright, Haubrich's obligation to make the monthly payments to petitioner was imposed by the May 16, 1968, opinion. The divorce decree merely reaffirmed that original obligation and did not create any new obligation in Haubrich or new right in petitioner other than to increase the amount of the payments to reflect the arrearage *121 that had accrued under the May 16, 1968, opinion (or possibly, the 1966 temporary order). Thus, the fact that in this case the legal separation ultimately ripened into a final divorce is of no consequence here; the obligation to pay over 10 years arose when the parties were legally separated, continued through the parties' divorce, and, as noted in Wright, "the statute covers payments in either category." 62 T.C. at 395. Accord Ellert v. Commissioner,311 F.2d 707, 709 (CA6 1962), affg. a Memorandum Opinion of this Court, [14] which suggests that payments of a principal sum, if made pursuant to an agreement that is referred to either in a separation decree or a divorce decree, may be tacked onto the payments required by the decree to satisfy the payments over the 10-year period requirement of section 71(c)(2).
We hold for respondent on this issue. II.Office-in-the-Home Expenses
Petitioner maintains that the expenses she incurred for maintaining an office in her home are deductible under section 162(a). That is, petitioner contends that she was required to maintain an office in her home because the on-campus office the College provided to her was unsuitable in *122 that: (1) the hours for which the office was available to her were restricted, (2) she felt unsafe remaining on campus in the late afternoon and evening several criminal offenses had allegedly occured there, and (3) the office was cramped because of the number of people assigned to that space, lacked sufficient room for her books as well as safekeeping, and did not include availability of an adequate typewriter. Respondent contends that these expenses are not deductible under section 162(a) because (1) the deduction is prohibited by section 262, since petitioner maintained the office in her home for her personal convenience, (2) the College provided to petitioner a suitable office which was available to her for reasonable hours, and (3) the College did not require petitioner to maintain an office at home in which to work. Respondent contends that we should disregard petitioner's testimony as to (a) petitioner's limited access to her office, because petitioner's position on this point was not disclosed to respondent before the day of the trial, and (b) petitioner's fear of danger at the office on evenings and weekends, because of lack of corroboration of "petitioner's self-serving *123 testimony". We agree with respondent's conclusion. Deductions are allowable under section 162(a)[15] for the taxpayer's ordinary and necessary expenses in carrying on a trade or business. However, because of section 262, [16] personal expenses generally are not deductible. Feldman v. Commissioner,86 T.C. 458, 464 (1986); Sharon v. Commissioner,66 T.C. 515, 522-525 (1976), affd. 591 F.2d 1273, 1275 (CA9 1978). Where there is a mixture of personal or family considerations and business considerations *124 for an expenditure, special care is required in determining which considerations predominate, and whether any part of the expenditure may qualify for deduction under the dichotomy of section 162 and section 262. See Feldman v. Commissioner,86 T.C. at 464; Sharon v. Commissioner,66 T.C. at 524. The distinction between trade or business expenses on the one hand and personal expenses on the other hand is necessarily based on a weighing and balancing of the facts and circumstances in each case. Heineman v. Commissioner,82 T.C. 538, 542 (1984). In Sharon v. Commissioner,supra, we were confronted with the question whether the taxpayer, a lawyer, could deduct one-sixth of the rental and other costs of his apartment for his "home office".In that case, the taxpayer's employer did not require him to maintain an office at home or to work beyond regular working hours.He was given a set of keys to his office. His office at home was not better suited for the performance of his employment duties than the office provided by his employer. However, the taxpayer found it more convenient to work at home when he needed to work extra hours. He also used his home office to do reading that would *125 allow him to keep current in the legal profession. The taxpayer used his home office for a maximum of 15 to 20 hours per week. In holding that the expenses in question was not ordinary and necessary business expenses deductible under section 162(a), but rather were nondeductible personal expenses, we stated as follows ( Sharon v. Commissioner,66 T.C. at 524): It is true that the Supreme Court has interpreted the word "necessary" as used in a predecessor of section 162(a) to mean "appropriate and helpful" in "the development of petitioner's business." Welch v. Helvering,290 U.S. 111, 113 (1933). It is also true that the petitioner's utilization of a room in his apartment for occasional office work was appropriate and helpful in his work in the sense that it was fitting, proper, and useful. However, that is not sufficient for the purposes of section 162(a). * * * In the context of Sharon, we pointed out that we must also consider the impact of section 262's prohibition on deduction of "personal" or "living" expenses. We then stated in Sharon as follows (66 T.C. at 524-525): Many people in business or in the professions may, from time to time, find it convenient to take work home *126 with them, but such occasional performance of business in the home does not convert a part of the home into a place of business. The use of a portion of an apartment for business purposes for reasons of personal convenience, comfort, or economy will not support a deduction under section 162(a). [17]
The Court of Appeals for the Ninth Circuit further expanded upon the foregoing rationale when, in affirming our opinion in Sharon, it noted as follows ( Sharon v. Commissioner, 591 F.2d at 1274): Sharon was not required to maintain a home office because of the nature of his employment or because there was not adequate space at the employer's place of business. [Citations omitted.] Nor did logistical problems peculiar to Sharon's duties necessitate the home office, compareNewi v. Commissioner,432 F.2d 998, 1000 (2d Cir. 1970); rather, the home arrangement was adopted by Sharon to make working in the evenings more *127 pleasant and convenient. [Fn. ref. omitted.] Shortly after our opinion in Sharon, we decided Meehan v. Commissioner,66 T.C. 794 (1976), which presents a set of facts quite similar to those of the instant case. In Meehan, the taxpayer was a candidate for a doctorate degree in industrial arts education with a specialty in teacher education at Pennsylvania State University. As part of his graduate studies, the taxpayer was required to prepare a curriculum and to teach and to advise undergraduate students. To carry out these duties, the taxpayer was provided with an on-campus office that he shared with about five other graduate assistants. The taxpayer had access to this office at all times by virtue of a key that was issued to him. The office had fluorescent lighting and furniture for each graduate assistant, but it appears that they had to share a telephone, typewriter, and bookshelves.Because each of the graduate assistants used the office to meet with his or her students, the office could become crowded and noisy at times. During normal working hours, the taxpayer spent the day in his on-campus office or teaching a class. In the evenings, the taxpayer used a portion of his *128 living room in his one-bedroom apartment as an office. There, he studied, wrote, prepared his teaching materials, or consulted with his students. In Meehan, we described our opinion in Sharon, and then analyzed the application of the law to the Meehan facts, as follows (66 T.C. at 807-808): Thus, the "appropriate and helpful" test relied on by petitioner is not determinative; we instead focus on section 262 and specifically section 1.262-1(b)(3) of the regulations thereunder which provides: (3) Expenses of maintaining a household, including amounts paid for rent, water, utilities, domestic service, and the like, are not deductible. A taxpayer who rents a property for residential purposes, but incidentally conducts business there (his place of business being elsewhere) shall not deduct any part of the rent. If, however, he uses part of the house as his place of business, such portion of the rent and other similar expenses as is properly attributable to such place of business is deductible as a business expense. Applied in the context of the instant case, this regulation clearly precludes deduction of the rent and electricity expenses at issue. Quite succinctly, petitioner's office *129 area in his living room does not constitute a "place of business," in terms of either quantum or quality of activity, as contemplated by the regulation. As in Joel A. Sharon,supra, where the taxpayer maintained an apartment for residential purposes and incidentally used a spare bedroom as an office in which to do some reading and writing in connection with his employment, petitioner's use of the office area in his living room for some reading, preparation and checking of mechanical drafts pursuant to his various graduate assistantship responsibilities does not rise to the dignity of a "place of business." Although we believe that the rationale of Joel A. Sharon,supra, controls the instant case, we derive further support for our conclusion herein by analogy to the rule in Fausner v. Commissioner,413 U.S. 838 (1973), in respect of commuting expenses: Congress has determined that all taxpayers shall bear the expense of commuting to and from work without receiving a deduction for that expense. We cannot read § 262 of the Internal Revenue Code as excluding such expense from "personal" expenses because by happenstance the taxpayer must carry incidentals of his occupation with him. *130 Additional expenses may at times be incurred for transporting job-required tools and material to and from work. Then an allocation of costs between "personal" and "business" expenses may be feasible. * * * [413 U.S. at 839; fn. refs. omitted.] Petitioner herein incurred no additional expenses by virtue of his use of a portion of his living room as office; rather, the expenses for rent and electricity at issue are expenses which petitioner would otherwise have incurred incident to his residential use of the apartment. Just as the incidental and occasional performance of graduate assistantship work does not convert petitioner's living room into a place of business neither does it convert nondeductible, personal living expenses into business expenses. Section 262 admits of no such alchemy. In Gestrich v. Commissioner,74 T.C. 525, 530 (1980), affd. without published opinion 681 F.2d 805 (CA3 1982), we held that an author was entitled to deduct his office-in-the-home expenses when he showed that that was his only office. We concluded that Gestrich's "use of this office was not 'purely a matter of personal convenience, comfort, or economy.' Sharon v. Commissioner,66 T.C. 515, 523 (1976), *131 affd. 591 F.2d 1273 (CA9 1978. Rather, it was a business necessity." In the instant case, too, we must consider the impact of section 262's prohibition on deduction of "personal" or "living" expenses. The record in the instant case shows that the College provided an on-campus office to petitioner, which was available on weekdays from 7:00 a.m. to 10:30 p.m., and sometimes on Saturday mornings. We have made findings as to the size of the office which suggest that space was at a premium, but there is no indication in the record that petitioner was forced to work at home because space or noise factors made her on-campus space unusable. Also, petitioner has not contended that her on-campus office was closed too early in the day (or was opened too late in the morning) to allow her to complete her work in the on-campus office. Rather, the thrust of her argument is that fear drove her out of the on-campus office too early in the day. The record does show that she had a fear for her safety -- the record does not show whether the fear was reasonable; it does not show when she left her on-campus office each day; it does not show whether the campus area was well-lit and well-populated *132 for some hours after she left her on-campus office; it does not show whether it was impractical to arrive at her on-campus office earlier in the day in order to make up for time lost at the end of the day. What we have is an on-campus office and a use by petitioner of facilities in her home to supplement the office. The cost of such a use of her home by petitioner is, on its face, a "personal" or "living" expense, as to which section 262 forbids a deduction unless the contrary is "expressly provided". On the basis of the record as a whole, we conclude that the exigencies of petitioner's trade or business were not such as to take petitioner's office-in-the-home expenses out of the plain language of section 262. We hold for respondent on this issue. [18] Because of respondent's concessions on other matters, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the year in issue. ↩
2. Respondent concedes, among other things, that petitioner is not liable for the addition to tax under section 6653(a).↩
3. The parties' stipulation states the name as "Alice C. Haubrich". However, the middle initial appears as "S." in the tax return, the 1975 court order changing petitioner's name, and both sides' requested findings of fact. We conclude that the middle initial "C." in the parties' stipulation probably is a typographical error and so we disregard it. Rule 91(e). Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice & Procedure.
4. The order assigned Mark to both parents and made no provision as to Kurt. We assume, based on the later documents (discussed infra↩), that Mark was assigned to Haubrich, and Kurt to petitioner.
5. After the divorce became final, petitioner was granted legal and physical custody of Kurt, and Haubrich was ordered to make monthly child support payments to petitioner for Kurt's benefit. Haubrich was granted legal and physical custody of Robin; and Mark was legally emancipated. Haubrich's obligation to support Kurt ended as of June 16, 1972, when Kurt became 18 years old.
6. Petitioner and Haubrich were represented by their respective lawyers in the legal separation and divorce proceedings.↩
7. In addition to the amounts received from Haubrich in 1974, petitioner received payments from Haubrich, pursuant to the legal separation judgment and divorce decree, from 1968 through 1978. Petitioner did not report these amounts as income on her Federal income tax returns for all these years because she regarded these payments as made pursuant to a property settlement, rather than alimony. Haubrich, however, deducted these amounts on his tax returns for all these years and, in particular, for 1974.↩
8. Petitioner received a bachelor's degree in biology and chemistry in 1966; she received a doctorate degree in 1979.
9. $559.84 is one-ninth of petitioner's substantiated home maintenance expenses. The parties agree that petitioner's home had only seven rooms, not nine as she had originally stated. As a result, if we decide that petitioner prevails on this issue, then the allowable deduction is to be increased accordingly.↩
10. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. -- (1) Decree of divorce or separate maintenance. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. [Section 71↩ was revised by section 422(a) of the Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 494, 795. This revision does not affect the instant case.] 11. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (c) Principal Sum Paid in Installments. -- (1) General rule. -- For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. -- If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum.For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
12. T.C. Memo. 1983-278↩.
13. By its terms, section 71(c)(2) applies only to a "principal sum referred to in paragraph (1)".Thus, respondent's position as to section 71(c)(2) seems to be in conflict with his position that there is no principal sum, within the meaning of section 71(c)(1). We assume that respondent's positions are maintained in the alternative, since respondent wins the "periodic payment" argument if he is correct in his contentions as to either section 71(c)(1) or 71(c)(2)↩.
14. T.C. Memo. 1961-79↩.
15. Section 162(a) provides, in relevant part, as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. -- There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. [The subsequent enactment of section 280A by sec. 601(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, 1569, effective for taxable years beginning after December 31, 1975, does not affect the instant case.] ↩
16. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter [i.e., chapter 1], no deduction shall be allowed for personal, living, or family expenses.↩
17. In so holding, we held we would no longer follow our opinion in Bodzin v. Commissioner,60 T.C. 820 (1973), revd. 509 F.2d 679 (CA4 1975), a case in which on facts similar to those presented in Sharon we allowed a deduction of office-in-the-home expenses under section 162(a)↩.
18. Section 280A first applied to taxable years beginning after December 31, 1975. Accordingly, the relevant law is that which applied before the enactment of section 280A, and interpreted in light of our Court-reviewed opinion in Sharon v. Commissioner,66 T.C. 515 (1976), affd. 591 F.2d 1273↩ (CA9 1978).