DAVID K. CARLISLE AND ALMA M. CARLISLE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86711. Filed December 11, 1961.

*David K. Carlisle*, pro se.
*Edward M. Fox, Esq.*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in petitioners' income tax for the year 1958 in the amount of $224.81.

The issues for our decision are (1) whether petitioners are entitled to include an attorney's fee in the amount of $750 and telephone and telegraph expenses in the amount of $302.02 in computing their allowable medical expense deduction for the taxable year 1958; (2) whether, if the above-mentioned attorney's fee and telephone and telegraphic expenses are not deductible as medical expenses, they are deductible as business expenses; and (3) whether petitioner David K. Carlisle's failure to receive disability severance pay upon his separation from active duty gave rise to a bad debt, deductible by petitioners in the year 1958.

### FINDINGS OF FACT.

Petitioners, David K. Carlisle and Alma M. Carlisle, are husband and wife. They reside in Los Angeles, California. For the taxable year 1958 they filed a joint income tax return with the district director of internal revenue at Los Angeles, California, on a cash basis.

In June 1950 petitioner David K. Carlisle, hereinafter referred to as petitioner, graduated from the United States Military Academy at West Point, New York, and was commissioned as a second lieutenant in the United States Army.

Subsequent to his commissioning and graduation he was assigned to active duty in Korea. During his tour of duty in Korea, he first suffered from an allergy later diagnosed as bronchial asthma.

In July 1952, while at Fort Biltmore, Virginia, petitioner appeared before an Army medical board as a result of his being rendered unconscious during field exercises. That medical board determined that petitioner was fit for active duty.

In May or June 1954, while assigned to a military installation in Maine, petitioner, at his own request, appeared before another Army medical board to determine his fitness for duty. This board determined that petitioner was fit for active duty.

In June 1955 petitioner was assigned to the Massachusetts Institute of Technology for 1 year of academic work at the graduate level.

As a requirement of this special assignment petitioner became obligated to spend an additional 3 years in the Army before becoming eligible for discharge. Petitioner completed his year at M.I.T. in June 1956.

During the summer of 1956 petitioner was assigned to duty in Germany. On August 27, 1956, petitioner requested reassignment within the European Command to duties as a general staff officer. At that time petitioner was serving as a company commander of an engineer construction company. Petitioner's request for reassignment was motivated in part by his allergy.

In March 1957, upon learning that his request for reassignment was to be denied, petitioner submitted a letter of resignation from the Army, alleging his allergic condition as the reason for his seeking to resign his commission. He requested that his resignation be made effective by May 15, 1957.

On or about May 6, 1957, petitioner received orders directing him to return to the United States for separation in accordance with his letter of resignation. He returned to the United States with his wife and two children. Before docking in Brooklyn he was given further separation orders issued by the commander of Fort Hamilton, New York, an Army separation center. However, upon disembarking in Brooklyn, petitioner was informed by the Adjutant General's Office that his resignation would not be accepted by the Department of the Army because of petitioner's obligation to spend an additional 3 years in the Army after leaving M.I.T. Petitioner proceeded to the Adjutant General's Office in Washington, D.C., to inquire about the acceptance or denial of his resignation. He was again told that his resignation would not be accepted because of his active-duty obligation. Petitioner thereupon received orders to report to Fort Ord, California, for assignment to new duties.

Upon arriving at Fort Ord, California, in June 1957, petitioner continued unsuccessfully his attempts to secure acceptance of his resignation. In October 1957, while at Fort Ord, he hired Thomas King, a former Air Force Colonel, an attorney in Washington, D.C., to assist him in securing the Army's acceptance of his resignation. In October 1957 petitioner paid King a fee of $750. This amount of $750 was the total amount paid to King by petitioner and comprises part of the medical expense deduction in issue in this case.

During the latter part of 1957 and the early part of 1958, petitioner made telephone calls and sent telegrams from Fort Ord, California, to Washington, D.C., in connection with his attempt to have his resignation accepted by the Department of the Army. The recipients of these telephone calls and telegrams were petitioner's attorney, his attorney's law partner, Assistant Secretary of the Army Milton, Senators Thomas Kuchel and William Knowland, Congressmen Clyde

Doyle and Adam Clayton Powell, Francis Tappen, who was senior legislative assistant to Senator Kuchel, and James C. Evans, who was the Special Assistant to the Assistant Secretary of Defense. During the first 5 months of 1958, petitioner expended $302.02 on said telephone calls and telegrams.

In May 1958 petitioner's letter of resignation was accepted by the Department of the Army. On May 27, 1958, petitioner received a general discharge from the United States Army.

At no time while petitioner was serving as a regular Army officer did the Army give him a disability rating because of his claimed bronchial asthmatic condition. Nor was petitioner discharged with a disability rating.

Subsequent to his discharge from the United States Army, petitioner was given a 10-percent disability rating by the Veterans' Administration because of his bronchial asthmatic condition.

Concurrently with his request to be released from active duty by the Army, petitioner requested that he be given disability severance pay under the provisions of sections 1201–1217, 1372–1373, and 1401–1403 of title 10 of the United States Code. Petitioner's request for disability severance pay was not granted.

No deductions were ever made from petitioner's Army salary to provide for disability severance pay, nor has petitioner ever included in any income tax return the amount of money he claims as a bad debt resulting from the denial of his request for disability severance pay.

Petitioner's expenditure in the amount of $750 for an attorney's fee was not paid or incurred during the taxable year 1958.

Petitioner's expenditures in the amounts of $750 for an attorney's fee and $302.02 for telephone and telegraph messages do not represent expenses paid during the taxable year 1958 for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body, or for transportation primarily for and essential to medical care.

Petitioner's expenditures in the amounts of $750 for an attorney's fee and $302.02 for telephone and telegraph messages do not represent ordinary and necessary expenses paid or incurred during the taxable year 1958 in carrying on a trade or business.

Petitioner's claim against the Department of the Army for disability severance pay, which claim has not been granted, does not represent a deductible debt which became worthless during the taxable year 1958.

OPINION.

Petitioner David K. Carlisle expended certain sums in his attempt to have his resignation from the United States Army accepted by the Army. He claims that $750 as an attorney's fee and $302.02 for tele-

phone and telegraph charges, incurred in furtherance of his ultimately successful attempt to be discharged, are deductible as medical expenses in computing his taxable income for the year 1958, or, in the alternative, as ordinary and necessary business expenses.

We may dispose of the item of $750 for a legal fee without extended discussion. It is apparent from the record that the amount was paid in 1957 and not incurred or paid in 1958. Hence, it is not deductible in the latter year either as a medical or a business expense. Secs. 213(a) and 162(a), I.R.C. 1954.[1]

We turn to the payment of $302.02 for telegrams and telephone calls by petitioner to attorneys, Congressmen, and government officials in connection with his efforts to obtain a discharge. We examine first petitioner's claim that the payments are deductible as medical expenses.

Section 213 allows a deduction for expenses paid for medical care.[2]

"Medical care" is defined in section 213(e).[3] While the language is broad, we have held that it does not encompass expenses which are primarily personal. *L. Keever Stringham*, 12 T.C. 580, affd. 183 F. 2d 579 (C.A. 6, 1950). Nor is there a deduction envisioned for expenses only tenuously medical in nature. Income Tax Regulations, section 1.213–1(e)(ii), includes the following language:

However, an expenditure which is merely beneficial to the general health of an individual, such as an expenditure for a vacation, is not an expenditure for medical care.

The determination of deductibility is admittedly difficult, resting almost entirely on the finding and somewhat imperfect interpretation of facts. It appears settled, however, that a proximate relationship between the expense and a specific physical condition or the prevention thereof must exist. *Edward A. Havey*, 12 T.C. 409 (1949). Petitioner has not demonstrated such proximity in the instant case.

Petitioner suffered at some times from bronchial asthma. At no time prior to his release from the armed services had his condition

---

[1] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(a) ALLOWANCE OF DEDUCTION.—There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer * * *

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[2] See footnote 1, *supra*.

[3] SEC. 213. MEDICAL, DENTAL, ETC., EXPENSES.

(e) DEFINITIONS.—For purposes of this section—

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body (including amounts paid for accident or health insurance), or

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A).

resulted in his being declared unfit for duty. In fact, upon examination, he was, on several occasions, declared fit. Moreover, the condition was contracted before petitioner voluntarily undertook training which extended his tour of duty. It was from such extended tour that petitioner eventually secured his release.

Petitioner has introduced no competent medical evidence to support his contention that release from the Army was essential to his physical health. Nor has he shown that his discharge effected relief from his bronchial condition. On the contrary, he testified that the condition persisted for some months. On the evidence, we conclude that such expenses as are here involved are too remote to qualify for deduction. A conclusion on our part that the expenses were for medical care would involve the assumption that petitioner's release from the Army bore a proximate therapeutic relationship to his illness. Such an assumption is unwarranted on the facts before us. The evidence supports a directly contrary view, since petitioner was found fit for duty by several medical boards.

Petitioner argues, in the alternative, that the expenses were ordinary and necessary business expenses.

While an officer in the United States Army is engaged in a trade or business, *Lindsay C. Howard*, 16 T.C. 157 (1951), affd. 202 F. 2d 28 (C.A. 9, 1953), we have difficulty in understanding how expenses incurred to expedite a discharge from the Army are ordinary and necessary in carrying on that business. Such expenses appear neither ordinary nor necessary to such a business under even the most broad reading of the statute.

Accordingly, the amount of $302.02 is not allowable as a deduction either as a medical expense or as an ordinary and necessary business expense. Cf. *Robert S. Seese*, 7 T.C. 925 (1946).

The second issue involves petitioner's claim that he is entitled to a bad debt deduction in the amount of $6,489.60 for unreceived disability severance pay to which he claims he is entitled.

The Army denied petitioner's request for disability severance pay. Petitioner asserts the Army was in error in this denial and, therefore, that the failure to honor his claim gives rise to a bad debt deduction under the provisions of section 166, I.R.C. 1954.[4]

---

[4] SEC. 166. BAD DEBTS.

    (a) GENERAL RULE.—

        (1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.

        (2) PARTIALLY WORTHLESS DEBTS.—When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

    (b) AMOUNT OF DEDUCTION.—For purposes of subsection (a), the basis for determining the amount of the deduction for any bad debt shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property.

The Income Tax Regulations under the 1954 Code provide in part as follows:

Sec. 1.166–1 Bad debts.

(c) *Bona fide debt required.* Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. * * *

The evidence does not establish that a debtor-creditor relationship existed. Petitioner's discharge without a ratable disability at the time thereof is evidence from which we find that no obligation to petitioner existed. Moreover, even if a valid debt exists, there is no evidence that such a debt became worthless in 1958. It is manifest that the United States Government had and has the capacity to pay its valid obligations.

Accordingly, petitioners are not entitled to the claimed bad debt deduction.

*Decision will be entered for the respondent.*