ARNOLD H. FELDMAN AND CAROLE L. FELDMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17678-79.     Filed March 25, 1986.

Arnold H. Feldman and Carole L. Feldman, pro se.
*Howard P. Newman,* for the respondent.

CHABOT, *Judge*: Respondent determined a deficiency in Federal individual income taxes against petitioners for 1975 in the amount of $674.[1]

The issues for decision[2] are as follows:

---

[1]Of this amount, self-employment taxes under chapter 2 are $190; the remaining amount is chapter 1 income tax.

Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the year in issue.

[2]The self-employment tax adjustment is derivative and depends on the resolution of the issue for decision. No adjustment has been made to petitioners' medical expense deduction to conform to respondent's determination as to petitioners' "above-the-line" deduction for the bar mitzvah reception expenses; respondent has not claimed an increased deficiency therefor under sec. 6214(a).

(1) Whether petitioners' expenses for their son's bar mitzvah reception are deductible under section 162, and

(2) If so, whether section 274 operates to disallow the deduction.

## FINDINGS OF FACT

Some of the facts have been stipulated; the stipulations and stipulated exhibits are incorporated herein by this reference.

When the petition was filed in the instant case, Arnold H. Feldman (hereinafter sometimes referred to as Feldman) and Carole L. Feldman, husband and wife, resided in Philadelphia, Pennsylvania.

Feldman was graduated from Yeshiva College of Yeshiva University; he was ordained as a rabbi at the rabbinic seminary of Yeshiva University. Feldman attended Dropsie College and Columbia University for post-graduate studies. Feldman has a juris doctor degree from Rutgers Law School. Feldman has been a rabbi since the mid-1950s.

The Greater Northeast Jewish Congregation (hereinafter sometimes referred to as the congregation), located in Philadelphia, Pennsylvania, was formed in 1962. In February 1963, Feldman became the rabbi of the congregation, after having served at another congregation in Philadelphia. Feldman continued to be the congregation's rabbi at the time of trial. On September 30, 1967, the congregation adopted as its name, Congregation Shaare Shamayim/G.N.J.C. (The term "shaare shamayim" means "gates of heaven".)

Feldman has never had a written contract with the congregation; instead, he has an oral lifetime employment contract. Feldman had been told in 1962 or 1963 that, if he became the congregation's rabbi at that time, then his compensation would grow as the congregation's income grew. In practice, however, there was not an automatic relationship between Feldman's compensation and the congregation's income. Feldman's salary is determined each year as part of the budget process, beginning with a recommendation by the budget committee, which is next considered by the executive committee, and which is then approved by the board of directors. Thereafter, Feldman's

proposed salary is lumped together with the proposed salaries of certain other employees of the congregation under the heading of "religious instruction" as a line item in the budget which is then voted on by the congregation's membership.

The executive committee consists of the elected officers and the active past presidents of the congregation. It counsels the congregation and the rabbi. The board of directors consists of the members of the executive committee, the committee chairmen, the members-at-large elected by the congregation's membership, and the presidents of the congregation's sisterhood, PTA, men's club, and senior adults organization. Feldman attends the board of directors meetings; although he has no vote, Feldman on occasion will address the board of directors on an issue that he feels strongly about.

Feldman is involved in the congregation's religious and educational instruction; he is also involved in the administration of the congregation, including the fundraising. Feldman's duties include conducting the congregation's services. At a typical bar mitzvah service held at the congregation, Feldman conducts the service and delivers a charge to the bar mitzvah boy. Feldman's compensation consists of a base salary, a contribution by the congregation to a retirement fund, and an amount for insurance. Feldman does not receive additional compensation for each bar mitzvah service over which he presides.

The primary source of income to the congregation is annual membership dues. Another major source of income to the congregation is catering and hall rental fees.

The congregation's membership committee (hereinafter sometimes referred to as the committee) is responsible for membership retention and membership solicitation. Each year, most new members join the congregation in the period from May through the high holy days (early fall). The congregation hosts teas and brunches to attract new members; Feldman and the congregation's cantor attend these affairs. A subcommittee of the committee works exclusively on membership retention. If the subcommittee is unsuccessful in reenrolling a member with the congregation, then Feldman is called to speak with the member. During

1975 and the years immediately before and after it, membership in the congregation was fairly stable.

Becoming a bar mitzvah is a significant religious event in the life of a Jewish male and in the life of his parents. To mark the occasion of petitioners' son, David, becoming a bar mitzvah, a service was held at the congregation's synagogue on a Sunday in June 1975. The service, which was held in the sanctuary, began at about 9 a.m. and ended at about noon. The sanctuary has more than 600 permanent seats; all of these seats were filled, as were the portable chairs that were set up specifically for the occasion. In addition, some people stood off to the sides of the sanctuary during the service. Feldman conducted the service and delivered a charge to his son. Immediately after the service, petitioners held a reception in the multipurpose room that is used as the catering hall of the congregation's synagogue.

Petitioners' understanding of their religious obligations is that they are required to have a reception to celebrate their son's becoming a bar mitzvah. The sources that set forth this religious obligation do not prescribe how many people should be invited, nor do they prescribe the elaborateness or degree of expense of such a reception. The reception at the synagogue was held to celebrate the occasion of petitioners' son's becoming a bar mitzvah.

Petitioners invited the entire membership of the congregation, about 725 families, to the bar mitzvah service and reception. Some of the members attended the reception but not the service. Apart from the members of the congregation, some of petitioners' relatives and personal friends also attended David's bar mitzvah service and reception.

No prospective members of the congregation were invited to the bar mitzvah service or to the reception.

About 700 people attended the reception, which was buffet-style. Various hors d'oeuvres, salads, desserts, and wines were served. A musical band was hired to play at the reception. The caterer for the reception was comparatively new to the congregation. At the reception, petitioners stood in a receiving line and shook hands with everyone in attendance. The reception ended at about 4:30 p.m. Petitioners' son's bar mitzvah service and the reception after it

constituted the largest social gathering held at the congregation's synagogue.

Rabbis in the Philadelphia area generally invite the entire memberships of their congregations to receptions to mark the occasions of their sons' becoming bar mitzvah or their daughters' becoming bas (or bat) mitzvah.

In his 25 years as a rabbi, Feldman conducted more than 2,000 bar mitzvah services. He performed the same rabbinic functions at those services as he did at petitioners' son's bar mitzvah service. He did not pay for any reception at any of these other bar mitzvah services. It is customary for the parents of the child involved to pay for any reception after such a service. At times, there may be two receptions following a bar mitzvah service, one for the guests of the bar mitzvah boy's family and one for the other people who have attended the service. Petitioners would not have invited the entire membership of the congregation to the bar mitzvah service and reception if Feldman had not been the rabbi of the congregation. However, any person, whether or not a member of the congregation may attend bar mitzvah services at the congregation, including petitioners' son's bar mitzvah service; any such person would have been permitted to attend the reception in the synagogue immediately after the service.

Petitioners spent $4,096[3] for their son's bar mitzvah reception. Petitioners were never reimbursed, nor were they entitled to be reimbursed, by the congregation for any portion of the cost of David's bar mitzvah reception.

In 1976, the congregation installed 30 stained glass (clerestory) windows in its sanctuary. The congregation installed the stained glass windows not only for aesthetic purposes, but also to enable the congregation to receive funds through the sale and dedication of these windows.

At the bar mitzvah reception, a long-time member of the congregation spoke with a number of people about contributing money to buy these windows. This member also asked Feldman to ask these people to buy these windows. Either

---

[3]The parties agree that only $4,031 was deducted by petitioners on their tax return on account of this reception (see note 10, *infra*) and that, if petitioners were to prevail, then they would be entitled to deduct $65 in addition to the amount claimed on their tax return. Presumably, this would also involve slight modifications of petitioners' medical expense deduction floors (see note 2, *supra*).

during the service or at the reception, the president of the congregation discussed with Feldman how to approach certain members to buy these windows.

Feldman has never been in danger of losing his job as the congregation's rabbi. He was not required to invite the entire membership of the congregation to David's bar mitzvah service and reception, as a condition of his employment. The board of directors did not require Feldman to discuss the stained glass window fundraising project with members of the congregation, at David's bar mitzvah service or reception. The board of directors neither required Feldman to hold a big party nor to entertain the members of the congregation at his own expense each year. Petitioners' son's bar mitzvah service and reception did not constitute a part of any formal fundraising series of activities.

Among the gifts received by David were $1,500 from his grandparents and more than one hundred $25 U.S. savings bonds from various guests. David redeemed the savings bonds and used the proceeds to purchase a certificate of deposit. David also received a number of smaller cash gifts in varying amounts from various guests. The proceeds of the cash gifts were used in part to purchase a savings certificate for $1,000 and in part to purchase a capital note for $1,000. The balance was deposited in a regular passbook savings account. Petitioners did not keep any list of the guests who attended the bar mitzvah and they have no other records of the gifts received by David.

In the evening, after the reception at the congregation's synagogue ended, petitioners held a reception at their home, exclusively for about 100 of their relatives and personal friends. All of these people had also attended the reception at the synagogue in the afternoon. Petitioners did not deduct any of the expenses for the evening reception on their 1975 individual income tax return.

---

The predominant character of the synagogue reception to celebrate petitioners' son becoming a bar mitzvah was that of a personal and family celebration.

OPINION

Petitioners maintain that their expenses for their son's bar mitzvah reception at the synagogue is deductible because (1) the requirements of section 162 are satisfied and (2) since the reception was not "entertainment", section 274 is inapplicable. Petitioners assert alternatively that, if the reception was entertainment, then the expenses are nevertheless deductible under section 274 because the entertainment was "directly related to" or "associated with" the active conduct of Feldman's trade or business. Respondent contends that petitioners' expenses are neither ordinary nor necessary expenses of Feldman's trade or business as a rabbi, and so the requirements of section 162 have not been satisfied. Respondent also asserts that section 274(a) is applicable and that petitioners have failed to satisfy its requirements.

We agree with respondent's conclusion.

Deductions are allowable under section 162[4] for the taxpayer's ordinary and necessary expenses in carrying on a trade or business. However, because of section 262,[5] personal expenses generally are not deductible. *Sharon v. Commissioner*, 66 T.C. 515, 522-525 (1976), affd. 591 F.2d 1273, 1275 (9th Cir. 1978).

Where there is a mixture of personal or family considerations and business considerations for an expenditure, special care is required in determining which considerations predominate, and whether any part of the expenditure may qualify for deduction under the dichotomy of section 162 and section 262. See *Sharon v. Commissioner*, 66 T.C. at 524. In a setting such as the one in the instant case, any expenditure that survives the 162-262 analysis must also pass muster under section 274 in order for it to be deductible. This is a factual issue requiring petitioners to show that the purpose of the expense was primarily business rather than social or personal (*Chapman v. Com-*

---

[4]Sec. 162 provides, in relevant part, as follows:

SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *

[5]SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter [i.e., chapter 1], no deduction shall be allowed for personal, living, or family expenses.

*missioner*, 48 T.C. 358, 366 (1967)), as well as that the requirements of section 274 have been satisfied.

Petitioners' son's bar mitzvah reception cannot fairly be characterized as being a business meeting or business entertainment. Rather, the reception was to celebrate petitioners' son's becoming a bar mitzvah. The record does not include any copy of the notifications sent to the invitees, but we are confident that the notifications were invitations to join in a significant personal and family celebration and not invitations to deal with the congregation's finances, or with Feldman's status as rabbi, or with Feldman's compensation as rabbi.

Feldman was not required to discuss any of the congregation's business matters at the reception. The reception was not part of a formal series of fundraising activities.[6] Any fundraising or any other business matter conducted at the reception was merely incidental. Although petitioners' motives for inviting the entire membership of the congregation to the bar mitzvah service and reception may have included some concern for enhancing Feldman's position as rabbi of the congregation, as petitioners aver, we conclude that the predominant character of the reception was that of a personal and family celebration, and that petitioners have failed to show that any business elements rose to such a level as to permit us to characterize the expense for the reception as being a trade or business expense. See *Haverhill Shoe Novelty Co. v. Commissioner*, 15 T.C. 517 (1950).

Petitioners contend that "while a reception on the occasion of the Bar Mitzvah of a son may to the lawyer be a personal or social event, to the Rabbi serving in a congregation it is an integral part of his professional activities."

---

[6]The congregation's president testified as follows:

Q. But you consider it a part of the window fundraising activities, the bar mitzvah of the rabbi's son?

A. I don't understand that question.

Q. Do you consider as a part of this series of activities designed to raise funds to buy the stained glass windows, do you consider the rabbi's son's bar mitzvah a part of those activities?

A. Not specifically, no. It was an activity that came about, and it was an ideal time to be able to contact a lot of people. But it wasn't specifically for that purpose.

Q. So it was coincidental just because there were a lot of people in the synagogue.

A. Sure.

While we may agree that the rabbi who conducts his son's bar mitzvah service does so as an integral part of the rabbi's professional activities, we note that analogous events occur in many walks of life. For example, members of the clergy and judges conduct their children's weddings, principals preside over their children's school graduations, and one notary public administered the oath of office to his son[7] as President of the United States. However, it does not follow that the subsequent reception for the son or daughter is ipso facto "an integral part of [the parent's] professional activities", even though the parent may pay for the reception and play a prominent role in the reception. As to the bar mitzvah reception in dispute in the instant case, Feldman stands in no better a tax position than anyone else who invites a large number of people to a family celebration and has in mind the idea that the invitations might enhance either an existing business relationship or a hoped-for business relationship.

We do not propose to set down a general rule in the instant opinion that one can never convert a basic life-cycle family celebration into a business expense.[8] We content ourselves with concluding that petitioners did not succeed in effecting such a conversion in the instant case.

Petitioners cite *Howard v. Commissioner*, T.C. Memo. 1981-250, "as an analogous fact situation to the case at bar." We disagree with petitioners. Our decision in *Howard* is distinguishable because there, the home entertainment expenses for some private dinner parties were incurred in the course of the taxpayer discharging his executive duties. Most of the invitees were professional rather than social acquaintances. The dinner parties enabled the taxpayer (1) to discuss developments and ideas with people who were prominent in their professions, (2) to keep abreast of topics that were important to him as a corporate executive in the

---

[7]Coolidge, (John) Calvin: 3 Micropaedia, Encyclopedia Britannica, p. 125 (15th ed. 1977).

[8]One might argue that a caterer, a band leader, or a professional master of ceremonies might use his or her child's life-cycle celebration as a showpiece for the parent's business, and perhaps be able to do so without offending the guests. Even in such an instance, there would be a question of fact as to whether the business aspect (sec. 162) would predominate over the personal or family aspect (sec. 262).

communications business, and (3) to establish contacts that were useful sources of information in the future.[9]

We hold for respondent on this issue.[10]

The remaining issue relates to section 274. The purpose of section 274[11] is not to expand the types of expenses which are deductible under other sections, but to impose additional requirements on certain types of expenses (for entertainment, gifts, etc.). See S. Rept. 87-1881 at 27, 1962-3 C.B. 707, 733; H. Rept. 87-1447 at 19, 1962-3 C.B. 405, 423; H. Rept. (Conf. Rept.) 87-2508 at 15, 1962-3 C.B. 1129, 1143; *Andress v. Commissioner*, 51 T.C. 863, 866 (1969), affd. 423 F.2d 679 (5th Cir. 1970); sec. 1.274-1, Income Tax Regs.

Because of our conclusion that petitioners' expenses for the reception are not deductible under section 162, we need not consider whether the more stringent section 274 requirements are met.

*Decision will be entered for the respondent.*

---

[9]We note also that petitioners' attempt to distinguish the instant case from our decisions in *Fixler v. Commissioner*, T.C. Memo. 1978-423, and *Brecker v. Commissioner*, T.C. Memo. 1972-61, where we similarly faced the issue of the deductibility of bar mitzvah expenses, has fallen far short of its mark.

[10]On their tax return, petitioners deducted $5,326 for "ENTERTAINMENT", and explained as follows: "ENTERTAINMENT WAS FOR BAR MITCVAH [sic] OF SON—ENTIRE CONGREGATION INVITED." Respondent disallowed $4,031, stating that "it has not been established that more than $1,295.00 was for an ordinary and necessary, [sic] or was expended for the purpose designated." The parties have not favored us with an explanation as to what the allowed $1,295 was spent for that could have been deductible in light of respondent's contentions and in light of our analysis in the instant opinion. Petitioners, of course, do not challenge the allowance of this $1,295. We leave the parties where we find them on this point.

[11]Sec. 274(a) provides, in relevant part, as follows:

SEC. 274. DISALLOWANCE OF CERTAIN ENTERTAINMENT, ETC., EXPENSES.

(a) ENTERTAINMENT, AMUSEMENT, OR RECREATION.—

(1) IN GENERAL.—No deduction otherwise allowable under this chapter [i.e., chapter 1] shall be allowed for any item—

(A) Activity.—With respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, unless the taxpayer establishes that the item was directly related to, or, in the case of an item directly preceding or following a substantial and bona fide business discussion (including business meetings at a convention or otherwise), that such item was associated with, the active conduct of the taxpayer's trade or business, * * *

[The subsequent amendment of this provision by sec. 361 of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2847, does not apply to the instant case.]