JOHN R. FOGG AND PATRICIA L. MASSEY FOGG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7780-86.        Filed August 20, 1987.

*James R. Harper*, for the petitioner.
*J. Mack Karesh*, for the respondent.

OPINION

SHIELDS, *Judge*: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to the provisions of section 7456(d)[1] (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1556, 100 Stat. 2755) and Rule 180 et seq. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, *Special Trial Judge*: Respondent determined a deficiency in petitioners' Federal income taxes for the taxable years 1982 and 1983, of $1,000 and $181.90, respectively. The case was submitted on a stipulation of facts pursuant to Rule 122.

After concessions, the issues for decision are (1) whether petitioners are entitled to deduct the cost incurred in moving a sailboat pursuant to section 217; (2) whether, under section 162, petitioners are entitled to deduct entertainment expenses incurred in connection with a "change-of-command" ceremony, and (3) whether petitioners are entitled to deduct various miscellaneous expenses pursuant to section 162.

FACTS

The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioner John R. Fogg (hereinafter Col. Fogg or petitioner) is a Lieutenant Colonel in the U.S. Marine Corps. He was a Marine officer on active duty throughout the years 1982-83. At the time they filed their petition, petitioners resided in Beaufort, South Carolina. The petitioners were married throughout 1982-83, and filed joint income tax returns for those years.

1. *Moving Expenses*

On their 1982 return, petitioners claimed a moving expense deduction of $2,530. The amount in dispute, $1,796,

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided.

consists of their actual expenses incurred in moving a sailboat from their old residence in Florida to their new residence in South Carolina. The boat moving expenses were not reimbursed by the Marine Corps. The parties have agreed that petitioners made a job-related move.

The boat, a 36-foot sailboat, has not been used in a trade or business or for investment purposes. Instead, petitioners are active sailors and had frequently used the boat for recreational activities. In addition, they resided on the boat for 2 weeks prior to their departure from Florida, and for 9 weeks after their arrival in Beaufort. The boat was purchased in 1978 and kept by petitioners until 1984 when they replaced it with another boat. As stipulated by the parties, the issue before this Court is whether petitioners' sailboat is a "personal effect" within the meaning of section 217(b)(1)(A).

## 2. *Entertainment and Miscellaneous Expenses*

Petitioner Col. Fogg claimed employee business expenses for the taxable years 1982 and 1983, which respondent disallowed for the most part. After concessions, the employee business expenses remaining in dispute are as follows:

|  | *1982* |
| --- | --- |
| Functions | $1,309.00 |
| Stationery and cards | 54.00 |
|  | *1983* |
| Functions | $507.33 |
| Dues | 240.20 |

The expenses claimed as functions are for the costs of entertainment in connection with a change-of-command ceremony. Petitioners claim that the costs of the change-of-command functions qualify as ordinary and necessary business expenses deductible under section 162. The respondent contends that these expenses are voluntary personal expenses that are disallowed under section 262.[2]

The parties have stipulated that the change-of-command ceremony and attendant receptions are customs and traditions of the Marine Corps. The actual change of command

---

[2] The parties have stipulated that section 274 is not at issue in this case.

consists of a formal ceremony in which the outgoing commanding officer conveys the unit's flag to the incoming commanding officer. The change-of-command ceremony is an official function: the troops are in formation, there is a band, and attendance is mandatory.

Pursuant to the customs and traditions of the Marine Corps, petitioners hosted a party at their home for guests the night before the ceremony. The cost of this party was $244.37. Directly after the change of command, a reception was held at the Officers' Club.[3] The guest list was composed according to strict Marine Corps protocol, and petitioner held scant authority over the nature and time of the entertainment. Petitioners paid $1,064.63 for the reception. Although the change-of-command receptions are characterized by the Marine Corps as "official entertainments" and all commanding officers are required to engage in official entertaining in the performance of their duties,[4] the receptions are not mandated by specific regulations or orders, and the amounts spent for such entertainments are not reimbursed by the Marine Corps.

On the return of 1983, Col. Fogg also claimed the following deductions:

| Organization | Amount |
|---|---|
| Blue Angels Association | $25.00 |
| Officer's Club | 132.50 |
| Squadron Officers Fund | 82.70 |
| Total | 240.20 |

---

[3]Similar expenditures were made for a change of command in 1983, but the parties have agreed that the facts surrounding the Oct. 15 change of command are illustrative of the issues before us.

[4]A memorandum written by Commanding General K.A. Smith to commanding and executive officers concerning the conduct of official entertainment sets forth the functions of petitioner's command:

1. *As a function of Command, all Commanding Officers and Executive Officers are required from time to time to participate and engage in official entertaining in the performance of their duties.* Although no government funds are available to reimburse officers for personal funds expended in completing these duties, they must, nevertheless, be carried out in a professional and appropriate manner.

2. Whether the entertainment is official must be determined on a case-by-case basis; however, *as a function of Command several types of entertainment expenses are deemed necessary and clearly qualify as official. They are: Changes of Command,* entertainment of visiting dignitaries—both military and civilian, representing the Command within the civilian community, and representing your Command at official functions.

[Emphasis supplied.]

These expenses also were incurred pursuant to customs and traditions of the Marine Corps, but not mandated by specific orders.

OPINION

1. *Moving Expenses*

Section 217 provides in pertinent part as follows:

SEC. 217(a). DEDUCTION ALLOWED.—There shall be allowed as a deduction moving expenses paid or incurred during the taxable year in connection with the commencement of work by the taxpayer as an employee or as a self-employed individual at a new principal place of work.

(b) DEFINITION OF MOVING EXPENSES.—

(1) IN GENERAL.—For purposes of this section, the term "moving expenses" means only the reasonable expenses—

(A) of moving household goods and personal effects from the former residence to the new residence * * *

Neither the legislative history, the statute itself, nor the regulations suggests that the words "personal effects" should be given other than their commonly understood meaning. Webster's Dictionary defines personal effects as property appertaining to one's person and having a close relationship thereto. Webster's Third New International Dictionary (1981). Black's Law Dictionary describes personal effects as articles associated with a person or possessor, having a more or less intimate relation to such person; "effects" meaning movable or chattel property of any kind. Black's Law Dictionary (5th ed. 1979).

In *Aksomitas v. Commissioner*, 50 T.C. 679 (1968), the taxpayer attempted to deduct under section 217 expenses incurred in an unsuccessful attempt to move *Tradewinds*, a 45-foot, 13½-ton diesel yacht that was unseaworthy and in a state of disrepair, from Connecticut to Florida. The taxpayer had never used the yacht, and made no attempt to move it until more than 2 years after he had moved his family to the new residence. Thus, we found the yacht had little, much less intimate, association with the taxpayer at the former residence and was not a "personal effect" under section 217. Respondent contends that our opinion in *Aksomitas* is applicable here. We do not agree because that

opinion does not hold as a matter of law, that no boat can be a personal effect. Rather, it seems clear that the question is one of fact that must be decided from a consideration of all of the particular circumstances of each case.

In contrast to the situation in *Aksomitas*, petitioners were intimately associated with their boat. The record clearly reflects that they owned and frequently used the boat for 4 years prior to the move, and they lived on it for 2 weeks immediately prior to their departure from Florida and for 9 weeks immediately following their arrival in South Carolina. Furthermore, numerous personal effects were maintained on board, including kitchen utensils, deck chairs, life preservers, and a refrigerator. It is clear, therefore, that unlike the yacht in *Aksomitas*, the boat in this case was intimately related to petitioners and their life style, and we find that it is a "personal effect" of petitioners under section 217.

## 2. *Entertainment*

Section 162(a) provides that deductions shall be allowed for "all ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business." While the language of the statute seems straightforward, many gremlins of case law lurk beneath the surface, and, indeed, Mr. Justice Cardozo remarked 55 years ago that "To attempt to harmonize them would be a futile task." *Welch v. Helvering*, 290 U.S. 111, 116 (1933). The passage of time has not diminished that task, and we do not have the *hybris* to attempt it here. With those gremlins in mind, however, it is important to recall that the general thrust of section 162(a) is to allow deductions for current business expense while section 262 disallows "personal, living, or family expenses." The tension between these sections is reflected also in section 162(a) by two conspiring phrases—a "necessary" expense and "incurred" in carrying on a "business."

In examining this question, we are guided by *United States v. Gilmore*, 372 U.S. 39 (1963).[5] The Court set the stage, as we have done (372 U.S. at 45):

---

[5]*United States v. Gilmore*, 372 U.S. 39 (1963) involved a deduction for legal expenses under section 212. The Court, however, recognized that secs. 212 and 162(a) stand in pari materia with respect to the personal versus business analysis. 372 U.S. at 46.

A basic restriction upon the availability of a * * * [section 162(a)] deduction is that the expense item involved must be one that has a business origin. That restriction not only inheres in the language of * * * [section 162(a)] itself, confining such deductions to "expenses * * * incurred * * * in carrying on any trade or business," but also follows from * * * [section 262], expressly rendering nondeductible "in any case * * * personal, living, or family expenses." * * *

The question in *United States v. Gilmore, supra*, was the proper test to be applied in resolving the tension between section 162(a) or 212 and section 262 where the consequences of the action for which the expenses were incurred also affected business interest. The Court concluded (372 U.S. at 49):

we resolve the conflict among the lower courts * * * in favor of the view that the origin and character of the claim with respect to which an expense was incurred * * * is the controlling basic test of whether the expense was "business" or "personal * * * "

It may be argued, and, indeed, this may be the basis of respondent's position, that the "origin and character" of any entertainment expense of this nature by an employee is essentially social or personal because he cannot show a direct relationship to a specific business activity. But we have not taken such a narrow view of an employee's deductible expenses under section 162(a). See *Walliser v. Commissioner*, 72 T.C. 433, 437 (1979), and cases cited therein.

Petitioners, on the other hand, seem to take the position that the expenses are deductible simply because they were incurred by the dictates of the customs and traditions of the military. This argument also states too much. The military life is multifaceted in that it has business and social or personal aspects, both of which are steeped in traditions and customs. For example, there are social functions where, by custom and tradition, spouses are required to be present. Expenses of a spouse in attending the function may be incurred. We do not believe, however, that essentially personal expenses, such as for formal dress, would be rendered deductible by the custom and tradition requiring formal dress. Compare *Hynes v. Commissioner*, 74 T.C. 1266, 1289-1292 (1980); *Drake v. Commissioner*, 52 T.C. 842 (1969). See also *Preston v. Commissioner*, T.C. Memo.

1961-250. This however, does not mean that the requirement of an expenditure by "customs and traditions" may not be relevant. But, an inherently personal expense cannot be "converted into a business expense by a formalistic requirement of his employer that they be incurred." Cf. *Noland v. Commissioner*, 269 F.2d 108, 113 (1959), affg. a Memorandum Opinion of this Court.

Rather, as already stated, the correct focus is on the nature of petitioner's business and the relationship between that business and the circumstances that give rise to the expense. In this regard, we have recognized that a military officer is engaged in a trade or business. *Carlisle v. Commissioner*, 37 T.C. 424, 429 (1961); *Howard v. Commissioner*, 16 T.C. 157, 161 (1951), affd. 202 F.2d 28 (9th Cir. 1953).[6] See also *Noland v. Commissioner*, 269 F.2d at 111. Furthermore, we have no difficulty in finding that the origin and character of the events or circumstances that give rise to the expenditures in question are directly related to petitioner's trade or business of being a military officer. The expenses directly flowed from a business ceremony in which petitioner was invested with the command of his unit. Compare *Feldman v. Commissioner*, 86 T.C. 458, 465 (1986) ("the predominant character of the reception was that of a personal and family celebration.")

Even if a direct relationship between an expense and the taxpayer's business is established, however, there are other questions to be answered: were the expenses "ordinary and necessary." The phrase contains dual requirements--i.e., it must be both "ordinary" and "necessary." See, e.g., *Commissioner v. Lincoln Savings & Loan Association*, 403 U.S. 345, 354 (1971). Moreover, both terms are words of art. In *Commissioner v. Tellier*, 383 U.S. 687, 689-690 (1966), the Court stated:

The principal function of the term "ordinary" in §162(a) is to clarify the distinction, often difficult, between those expenses that are currently deductible, and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset. * * *

---

[6]The result we reached in *Howard v. Commissioner*, 16 T.C. 157 (1951), has not withstood the test of time (see *United States v. Gilmore, supra* at 51 n. 20), but our analysis of this point has not been questioned.

Respondent, however, does not argue that these expenses were not ordinary. Rather, respondent contends that the expenses were not "necessary." In *Commissioner v. Tellier, supra,* the Court also addressed this issue (383 U.S. at 689):

Our decisions have consistently construed the term "necessary" as imposing only the minimal requirement that the expense be "appropriate and helpful" for "the development of the taxpayer's business."

Respondent contends that in order for the expenses to be "necessary," petitioner must prove that, as an employee, "his employer required him to bear the expense without reimbursement." See, e.g., *Fountain v. Commissioner,* 59 T.C. 696, 708 (1973). We recognize that the line of cases suggesting this result has not been without critics.[7] We do not believe, however, that it is necessary to revisit this area in the context of this case. It is quite clear that these expenses were required by Col. Fogg's employer. We noted in *Pollock v. Commissioner,* 10 B.T.A. 1297, 1299 (1928), in which we held unreimbursed entertainment expenses of a naval officer to be deductible:

If * * * [petitioner] had failed to extend courtesies to a foreign official, he probably would not have been demoted, but he would have been liable to being summarily detached for failing in official courtesy, his record would have been impaired, and it probably would have resulted in his loss of future promotion.

Thus, while the officer in *Pollock* may not have been under a direct order, we recognized that one need not be threatened with a court martial in order for an expenditure of a military officer to be considered "necessary." Clearly a "hard-headed businessman" would have incurred those expenses. See *Cole v. Commissioner,* 481 F.2d 872, 876 (2d Cir. 1973), affg. a Memorandum Opinion of this Court. Col. Fogg faced the same situation, and we have no difficulty in arriving at the same conclusion.[8]

[7]See, e.g. *Davis v. Commissioner,* 38 T.C. 175, 184-186 (1962) (Raum, J., dissenting); Wolfman, "Professors and the 'Ordinary and Necessary' Business Expense," 112 U. Pa. L. Rev. 1089 (1964). See also Brief for the Appellee, filed by the Tax Division, Department of Justice, in *Peter Stemkowski, Appellant v. Commissioner of Internal Revenue, Appellee,* No. 81-4194, 2d Cir., at 46-47. This criticism is primarily directed to the situation where the expense is not required by the employer. That is not the situation with which we are faced here.

[8]Furthermore, this Court will generally follow the law of a circuit to which an appeal would lie, even when our precedent is to the contrary. *Golsen v. Commissioner,* 54 T.C. 742, 756-758

Petitioners are entitled to deduct their costs of the entertainment in connection with the change-of-command ceremony.

### 3. *Miscellaneous Deductions*

Petitioners claimed deductions on their 1982 tax return for stationery and calling cards in the amount of $54. On their 1983 return, they claimed the following deductions:

Blue Angels Association .......................... $25.00
Officers' Club ................................... 132.50
Squadron Officers' Fund .......................... 82.70

Petitioners' basic argument with respect to these items is that they were required by the "customs and traditions" of the Marine Corps. As already stated, such circumstances alone will not satisfy the "incurred in a trade or business" requirement of section 162(a). We note also that many of these items are inherently suspect and may have their origins in essentially social aspects of military life—e.g., calling cards, stationery, officers' club dues.[9] We are aware that calling cards and personal stationery are required at or for certain military functions, but we are also aware that these items are used on occasions that have the origins in purely personal or non-business affairs—weddings, funerals, etc. Similarly, we are aware that an officers' club, like any social club, may be used for business entertainment. On the other hand, the officers' club is also the center of social life for many officers and their families on military posts and bases. Petitioners had the burden of proof. *Welch v. Helvering, supra.* In view of our previous discussion, therefore, it was their burden to establish that the origin and character of these expenditures have a direct relationship to Col. Fogg's business. Petitioners offered no evidence

---

(1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). In *Stemkowski v. Commissioner,* 76 T.C. 252, 307 (1981), we upheld the disallowance of certain employee business expenses on the ground that they were not required by the employer. Both the Second and the Fourth Circuits reversed our holding. *Stemkowski v. Commissioner,* 690 F.2d 40, 47 (2d Cir. 1982); *Hanna v. Commissioner,* 763 F.2d 171, 172 (4th Cir. 1985). The venue for an appeal in this case is in the Fourth Circuit and, it would appear that the Court has refused to adopt the rule that "to be necessary" the expense must be required by the employer. Thus, we would follow the precedent set out in *Hanna v. Commissioner, supra.*

[9]There are, of course, other restrictions on deductions for club dues. See sec. 274(a). In light of our disposition of the issue under sec. 162(a), we need not consider those provisions.

on these critical points and, accordingly, we sustain respondent's disallowance of these items.[10]

We also have difficulty with the payment to the Blue Angels Association. The Blue Angels Association is comprised of present and former pilots who fly or have flown with the Blue Angels Squadron, a specialized unit of highly skilled pilots. The Association was formed "to preserve and maintain the high standards, customs, and traditions" of the Blue Angels and it maintains a fund donated by members and others for these purposes. Our problem is that we have no information as to how the Association operates. On one hand, it may be completely a social or fraternal type organization with limited membership. On the other hand, it may be a business group devoted to the exchange of aeronautical information. Both types of organizations would fit within the description given us. But, the tax implications of the different organizations would be different. Compare *Noland v. Commissioner, supra.* Given this uncertainty, we must find that petitioners have failed to carry the burden of proof that this expenditure was directly related to Col. Fogg's business of being a military officer.

The contribution to the squadron fund is a different matter. This is a fund, maintained within a military unit by donations from the unit officers, that is used to purchase mementos, such as unit emblems, for departing personnel, to pay for flowers for personnel in hospitals, etc. There are no appropriated funds for these purposes. Col. Fogg, as an officer in the unit, was expected to make contributions to the fund, and, as with the expenditures for entertainment, if he refused to contribute to the fund his career might have been jeopardized. Moreover, respondent does not suggest that Col. Fogg received, or would receive, any substantial personal benefit from the fund. We believe that the origin and character of this expense is clearly related to Col. Fogg's business of being a military officer and that this expense was appropriate and helpful to that career.

*Decision will be entered under Rule 155.*

---

[10]We do not consider petitioners' claim that they attended five official functions at the club sufficient to carry this burden. Their burden also includes establishing that the club was not substantially used for non-business purposes. There is no evidence with regard to this question.