T.C. Memo. 1998-437

UNITED STATES TAX COURT

JEFFREY C. AND KELLY O. STONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3812-97.                    Filed December 14, 1998

Jeffrey C. and Kelly O. Stone, pro se.

<u>Joan S. Dennett</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Carleton D. Powell pursuant to the provisions of section
7443A(b)(4) and Rules 180, 181, and 183.[1]  The Court agrees with
and adopts the opinion of the Special Trial Judge that is set
forth below.

_____

    [1]  Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the year in issue, and Rule
references are to the Tax Court Rules of Practice and Procedure.

OPINION OF THE SPECIAL TRIAL JUDGE

POWELL, Special Trial Judge:  Respondent determined a
deficiency and an accuracy-related penalty for negligence under
section 6662(a) in petitioners' 1994 Federal income tax in the
respective amounts of $10,959 and $2,192.

The issues focus on whether certain expenses paid by
petitioners during 1994 are deductible under section 162.  At the
time the petition was filed, petitioners resided in Belgrade,
Montana.

Before trial, petitioners filed a motion for summary
judgment raising various procedural issues concerning the
involvement of the Montana Department of Revenue and the Internal
Revenue Service examination of petitioners' returns for 1994
filed with the State of Montana and the Federal Government.
Petitioners' motion for summary judgment was denied in the
Court's opinion at Stone v. Commissioner, T.C. Memo. 1998-314.
We turn now to the underlying substantive dispute.

## Background

The facts may be summarized as follows.  Petitioner Jeffrey
C. Stone (Mr. Stone) operates an appliance repair business.[2]  Mr.
Stone has a shop in Belgrade that is approximately 8 miles from

---

[2]  Petitioners also testified that in addition to the
appliance repair business they conduct business activities
involving the sale of water and air filters and "Melaleuca"
sales.  It does not appear, however, that either of these
activities generated any income.

petitioners' residence.  Until September 1994, when Mr. Stone hired a secretary, petitioner Kelly O. Stone (Mrs. Stone) helped in the business by maintaining the business records and answering the telephone.  Mrs. Stone did not go to the shop; rather, she performed these activities from petitioners' home.  In 1994, petitioners had four children, Toni, Teni, Tally Jo, and Tucker, who were ages 12, 9, 7, and 4, respectively.

On their joint 1994 income tax returns (Federal and State), with regard to the Schedule C for the appliance repair business, petitioners reported gross receipts in the amount of $82,369 and a cost of goods sold in the amount of $28,890.  Petitioners claimed a deduction for expenses in a total amount of $42,737.  Petitioners' 1994 Federal and State returns were prepared by Cody & Co.  As a joint project, respondent and the Montana Department of Revenue audited Federal and State income tax returns that had been prepared by Cody & Co.  The Montana Department of Revenue's audit of petitioners' 1994 State return resulted in adjustments to the cost of goods sold and the disallowance of some of the claimed expenses.  The results of the audit were shared with respondent, and a notice of deficiency was sent to petitioners.  The following shows the expenses petitioners claimed during the Montana Department of Revenue audit and the amounts that were allowed by the Montana Department of Revenue and respondent.[3]

---

[3]  All amounts have been rounded to the nearest dollar.

| Expenses | Claimed During Audit[1] | Allowed |
|----------|------------------------|---------|
| Advertising | $2,508 | $2,324 |
| Car & truck | 12,425 | 9,822 |
| Contract labor | 893 | - 0 - |
| Depreciation | 1,088 | - 0 - |
| Dues & publications | 1,199 | 273 |
| Interest--Home mortgage | 580 | - 0 - |
| Insurance | 3,609 | 699 |
| Laundry | 765 | - 0 - |
| Legal & professional | 1,539 | 155 |
| Meals & entertainment | 780 | - 0 - |
| Office expense | 1,399 | 302 |
| Repairs | 4,207 | 38 |
| Sales promotions | 983 | - 0 - |
| Security | 754 | - 0 - |
| Supplies | 1,740 | 175 |
| Taxes | 1,451 | 15 |
| Utilities | 3,850 | 2,669 |
| Travel | 619 | - 0 - |
| Wages, commissions & fees | 2,813 | 1,257 |
| Bad debt | - 0 - | 82 |
| Freight | - 0 - | 150 |

[1] These figures do not necessarily reflect the amounts shown on the 1994 tax returns. They are taken from the stipulation of facts submitted at the trial. It is unclear to the Court what concessions, if any, have been made. Accordingly, the decision will be entered under Rule 155 in order to reflect any concessions that may have been made.

Of the $25,025 petitioners claimed during the audit for cost of goods sold, the Montana Department of Revenue and respondent allowed $24,238.

The auditing agent disallowed the expenses on the grounds that (1) the expenses were not properly substantiated, (2) the expenses were personal expenses, and (3) the expenses were not business expenses. Petitioners appealed the Montana Department of Revenues's determination to the State Tax Appeal Board of the State of Montana. The Board sustained the Department.

Essentially, petitioners make the same arguments here as they did before the Board.

## Discussion

Section 162(a) provides deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  On the other hand, section 262(a) provides that "no deduction shall be allowed for personal, living, or family expenses."  To some extent, there is a connection between an individual's personal expenses and his or her business expenses.  Thus, for example, while routine meals are necessary for an individual to function in the workplace, the expenditure is inherently personal and not deductible under section 162(a).  To establish the deductibility of an expense under section 162(a), the individual must show more than a tangential connection with the business:  he or she must show that the questioned expense is "directly connected" with a trade or business.  Sec. 1.162-1(a), Income Tax Regs.  We look, therefore, to the "origin and character" of the expenses to determine whether they are deductible under section 162(a).  Fogg v. Commissioner, 89 T.C. 310, 315-316 (1987); see also United States v. Gilmore, 372 U.S. 39, 49 (1963).  Furthermore, petitioners bear the burden of proof.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  With these principles in mind, we turn to the disallowed expenses.

1. Meal Expenses, Sales Promotions

Petitioners provided receipts or canceled checks for approximately $1,523 paid to various restaurants and food stores. In addition, they provided receipts and canceled checks in the approximate amount of $965 for "sales promotion". Included in the alleged expenses are amounts expended for what Mr. Stone described as "public relations" and "to get my name out." Other alleged expenses were for Mr. Stone "just to grab a bite to eat", the children's birthdays, Christmas presents for nephews, and gifts and entertainment of friends who also were clients. Mr. Stone was unable to identify the type of business that was discussed at the time the entertainment or meal expenses were incurred or the business reason for the gifts.

With regard to the expenditures that involved the children, petitioners argue that their children help in the business by answering the telephone and in general, but unspecified, ways. We bear in mind that the children were quite young (ages 4 through 12), and regardless of the contributions they might have made, these expenditures would have been incurred for personal reasons. These are clearly personal expenses. With regard to the entertainment of and gifts to friends, petitioners argue that, if they derive any income from their friends for services rendered, they are entitled to claim business expense deductions. While friendship with the recipient is not necessarily fatal to the deductibility of an expense, petitioners must show that the

predominant motive for the expense was related to the business, and petitioners have failed to establish such a motive. Finally, the costs of Mr. Stone's lunches are nondeductible. Murphey v. Commissioner, T.C. Memo. 1975-317.

2. Travel Expenses

Petitioners provided receipts totaling $739 that they maintain represent business traveling expenses. According to Mr. Stone these expenses were incurred when they met with friends who were or had been their customers, when they went to visit Mrs. Stone's parents, and when they attended a baseball tournament in Idaho Falls. It is apparent that the primary or dominant purpose of these trips was personal, and whatever attention to business matters there may have been was relatively insignificant. These expenses are not deductible. Holmes v. Commissioner, T.C. Memo. 1983-442.

3. Home and Repair Expenses

Petitioners deducted various expenses with regard to their personal residence including various repairs, utility services, and supply expenses. The rationale for deducting these expenses is that a telephone used by Mrs. Stone in the appliance repair business was located on the ground floor of their residence, which constituted 25 percent of the space of the home.

Section 280A(a) provides generally that "no deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."

Section 280A(c)(1), however, provides a limited exception if "a portion of the dwelling unit * * * is exclusively used on a regular basis" as "the principal place of business for any trade or business of the taxpayer" or "as a place of business which is used by * * * customers in meeting or dealing with the taxpayer in the normal course of his trade or business".  There is no evidence that Mr. Stone met with customers in the normal course of his business at his residence.  Accordingly, the only ground upon which an exception to section 280A(a) could be based is that the portion of the residence was used exclusively on a regular basis as the principal place of Mr. Stone's business.

Even if we accept that a portion of petitioners' residence was used exclusively for business purposes, the Supreme Court's opinion in Commissioner v. Soliman, 506 U.S. 168, 174 (1993), makes it clear that that portion of the residence must be "the most important or significant place for the business".  Under Soliman, we need not decide where the most important or significant place of business was:  we need only determine whether the dwelling was that place.  It is quite obvious that the so-called home office was not that place.  Thus, section 280A(a) disallows any deductions with respect to the home.

4.  Cost of Goods Sold

Petitioners were unable to identify any error in respondent's determination with regard to the cost of goods sold. We therefore sustain respondent's determination.

5. <u>Taxes, Insurance, and Miscellaneous Expenses</u>

Petitioners claimed deductions for various expenditures for taxes and insurance. Respondent disallowed most of these deductions. With respect to the taxes paid to the State, deductions were allowed on Schedule A, except for the cost of a fishing license that was disallowed. With regard to the payment for insurance, respondent allowed a deduction for the business casualty insurance and disallowed deductions claimed for life insurance or other personal insurance. See sec. 264. Petitioners have not established that they are entitled to deductions in greater amounts than those allowed by respondent.

With regard to the balance of the disputed items, we have reviewed the record and sustain respondent's determinations. Deductions were claimed for petitioners' cats and dogs on the respective grounds that they were necessary to control the mouse populations and provide security at the shop. The animals, at least for the most part, were located at the residence. Deductions were also claimed for magazines such as People, Ladies Home Journal, and Family Circle. Petitioners did not explain the business purpose for these publications. These items speak for themselves.

6. <u>Section 6662(a) Penalty</u>

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) for negligence. Section 6662(a) provides that "there shall be added to the tax an

amount equal to 20 percent of the portion of the underpayment to which this section applies."  Section 6662 applies to "the portion of any underpayment which is attributable to", inter alia, negligence or disregard of rules or regulations.  Sec. 6662(b)(1).  Negligence "includes any failure to make a reasonable attempt to comply with the provisions * * * [of the Internal Revenue Code], and the term 'disregard' includes any careless, reckless, or intentional disregard."  Sec. 6662(c).

Petitioners essentially contend that they were not negligent because they relied on Cody & Co. to prepare their returns.  Mr. Stone testified that they were prompted to use Cody & Co. because:  "We found things that we probably could be able to--to deduct, you know.  I don't--wouldn't necessarily say they're grey, but I think most of the CPAs * * * don't do a thorough job. They're not ready to push a little bit."

In differentiating between personal and business expenses, there may be some "grey" areas, but the expenditures here do not fall within those areas, at least not without a Herculean effort of delusion.  The claimed expenses here, as noted by the Montana State Tax Appeal Board, are clearly personal living expenses of petitioners.

Moreover, while reliance on advice may provide a defense to negligence, it must be shown that the person rendering the advice was competent to give that advice and that the taxpayer provided him with requisite information.  See Freytag v. Commissioner, 89

T.C. 849, 888 (1987), affd. 904 F.2d. 1011 (5th Cir. 1990), affd. on other issues 501 U.S. 868 (1991).  There is nothing in this record to indicate that whoever gave the advice was competent. Indeed, if in fact such advice was given, the competency of the adviser would be severely impeached by the very nature of the advice.  Respondent's determination of negligence is sustained.[4]

Decision will be entered under Rule 155.

---

[4]  Petitioners complain on brief that they had no opportunity to "question" respondent regarding the deductions petitioners claimed on their returns.  The deductions, however, were based on expenditures made by petitioners.  We cannot understand how respondent would have relevant information concerning the nature of these expenditures.